## N. C. McDONALD, Appellant, v. MINNIE J. NIELSON, Respondent.

### (175 N. W. 361.)

**Schools and school districts — professional certificate required by superintendent of public instruction.**

In an action in the nature of quo warranto involving the title to the office of superintendent of public instruction of this state, it is *held:*

1. That a professional certificate issued under the provisions of § 737, Rev. Code 1899, is a teacher's certificate of the highest grade issued in this state, within the purview of § 1105, Comp. Laws 1913.

**Schools and school districts — collateral attack on certificate on ground that it was issued without adequate examination — qualifications of superintendent of public instruction.**

2. That such certificate cannot be collaterally impeached on the ground that it was issued without adequate examination.

Opinion filed October 10, 1919.

From a judgment of the District Court of Burleigh County, *Nuessle,* J., plaintiff appeals.

Affirmed.

*Carmody, Louden, & Mulready, Ed. S. Allen,* and *J. A. Hyland,* for appellant.

All the laws require of a state superintendent of public instruction is that he possesses the qualifications to enable him to properly and intelligently perform the duties of such office. State ex rel. Thompson v.

McAllister, 38 W. Va. 485, 24 L.R.A. 343, 18 S. E. 770; Rogers v. Buffalo, 123 N. Y. 173, 25 N. E. 274, 9 L.R.A. 579; Darrow v. People, 8 Colo. 420; State v. Covington, 29 Ohio St. 102; Enge v. Cass, 28 N. D. 219.

The Constitution is not a grant of authority so far as the legislature is concerned, but is a limitation of legislative power; and the legislative power of the general assembly is unlimited, except by such restrictions as the Constitution has imposed in express terms or by necessary implication. Scow v. Czarnicki, 264 Ill. 305, 106 N. E. 276; Idaho Power Co. v. Bloomquist (Idaho) 141 Pac. 1083; State v. Patterson (Ind.) 105 N. W. 228; State v. Medler (N. M.) 142 Pac. 376; Sheenan v. Scott, 143 Cal. 687; State v. McAllister, 38 W. Va. 485, 18 S. E. 770, 24 L.R.A. 343.

The provision in the Constitution, that no person shall be elected or appointed to any office in this state unless he possesses the qualifications of an elector, does not by implication forbid the legislature to require other reasonable qualifications for office. State v. Covington, 29 Ohio St. 102; Rogers v. Buffalo, 123 N. Y. 173, 9 L.R.A. 579, 25 N. E. 274; Darrow v. People, 28 Colo. 420.

"This office holds that the highest teacher's certificate issued in this state is a first-grade professional, issued since July 1, 1911, or a life professional issued prior to that date when held by a graduate of a standard college or university." Opinion of William Langer, Attorney General, Oct. 23, 1918.

*William Langer*, Attorney General, and *Edward B. Cox*, Assistant Attorney General, for respondent.

"The provisions of this Constitution are mandatory and prohibitory unless, by express words, they are declared to be otherwise." Art. 1, § 21.

It is not within the power of the legislature to add to the qualifications fixed by the Constitution or to impose the additional restrictions, and that provision of the act must be considered void. People v. McCormick, 261 Ill. 413, 105 N. E. 1053; Feibleman v. State, 98 Ind. 516; Sheenan v. Scott, 145 Cal. 684, 79 Pac. 350; State v. Goldhardt, 87 N. E. 133; Dapper v. Smith, 138 Mich. 104, 101 N. W. 60.

"If the legislature has by this act deprived citizens of the right to participate in the elections therein provided who are qualified to partici-

pate under the Constitution, aye, even if the legislature has deprived one citizen so qualified of such right, the act is void, as an attempted exercise of power it does not possess." Rison v. Farr, 24 Ark. 161, 87 Am. Dec. 52, decided in 1865.

Not only does the Constitution fail to confer upon the legislature by express words or necessary implication the power to add to or in any way alter the qualifications for the office of state superintendent of public instruction, as set forth in § 82 of the Constitution, but also by plain implication and express words such power is absolutely denied to the legislature. Enge v. Cass, 28 N. D. 219, 148 N. W. 607.

CHRISTIANSON, Ch. J.   This is an action in the nature of quo warranto.  It involves the title to the office of superintendent of public instruction of the state of North Dakota.

The plaintiff, McDonald, was elected to the office of superintendent of public instruction at the general election held in November, 1916. His term ended on January 5, 1919.  The plaintiff and the defendant were opposing candidates for the office of superintendent of public instruction at the election held in November, 1918, with the result that the defendant received 5,547 more votes than the plaintiff.  The state board of canvassers thereupon issued a certificate declaring said defendant, Minnie J. Nielson, to have been duly elected to said office; and at the proper time she duly qualified as required by law. The plaintiff, however, refused to surrender the office, but was compelled to do so by writ of mandamus issued out of this court.  State ex rel. Langer v. McDonald, 41 N. D. 389, 170 N. W. 873.  The plaintiff thereafter instituted this action in the district court of Burleigh county. The trial court ordered a dismissal thereof, and plaintiff has appealed.

This entire controversy hinges upon § 1105, Comp. Laws 1913, which reads: "There shall be elected by the qualified electors of the state at the time of choosing members of the legislative assembly, a superintendent of public instruction, who shall have attained the age of twenty-five years, who shall have the qualifications of an elector for that office, and be the holder of a teacher's certificate of the highest grade, issued in this state.  He shall hold his office at the seat of government for the term of two years, commencing on the first Monday

in January following his election, and until his successor is elected and qualified."

The plaintiff contends that the defendant is not "the holder of a teacher's certificate of the highest grade issued in this state," and hence is not eligible to the office of the superintendent of public instruction. The defendant makes two answers to this contention: (1) That she is "the holder of a teacher's certificate of the highest grade issued in this state" within the meaning of § 1105, supra; (2) that § 1105 contravenes §§ 82 and 128 of the state Constitution.

It appears that the provision embodied in § 1105 was first enacted in 1890. As enacted it read as follows: "There shall be chosen by the qualified electors of the state at the times and places of choosing members of the legislative assembly a superintendent of public instruction, who shall have attained the age of twenty-five years, and shall have the qualifications of a state elector and is the holder of a state certificate of the highest grade, issued in some state, or is a graduate of some reputable university, college or normal school. He shall hold his office at the seat of government for the term of two years from the first Monday in January following his election, and until his successor is elected and qualified." Laws 1890, § 1, chap. 62.

The law remained as enacted until 1911, when it was amended and re-enacted in the form in which it is now found in § 1105, Comp. Laws 1913. It will be noted that the original enactment provided that the state superintendent of public instruction must be "the holder of a state certificate of the highest grade, *issued in some state,* or a graduate of some reputable university, college, or normal school." By the enactment of 1911, the legislature changed the law so as to provide that the superintendent of public instruction must "be the holder of a teacher's certificate of the highest grade, issued in *this* state," and eliminated the alternative provision, or be "a graduate of some reputable university, college or normal school." Aside from these changes the statute remains as originally enacted in 1890.

From 1897 to 1905 the laws of this state provided for two different forms or grades of teachers' certificates issuable by the superintendent of public instruction and valid throughout the entire state. One was known as a normal certificate. Such certificate was valid for a term of five years, unless sooner revoked, and authorized the holder to teach

in any of the public schools of the state. It was issuable only to persons of good moral character, who had completed a prescribed course of study in a normal school, or passed an examination prescribed by the superintendent of public instruction. Rev. Code 1899, § 738. The other was known as a professional certificate. Such certificate was valid for life, unless sooner revoked, and authorized the holder to teach in any of the common or high schools of the state, without further examination. The statute provided that such certificate should be issued only to persons of good moral character, who passed a thorough examination in all the branches included in the courses of study prescribed for the common and high schools of the state, including methods of teaching and such other branches as the superintendent of public instruction might direct. It further provided that such certificate should in no case be granted unless the applicant had had at least five years' experience as a teacher, and could satisfy the superintendent of his ability to instruct and properly manage any high school of the state. Rev. Code 1899, § 737. Sections 737 and 738 also provided that the state superintendent of public instruction might, under certain conditions, grant professional certificates to graduates of the normal course in the state university, or to graduates of any of the normal schools of the state. These provisions, however, are not material to this controversy.

It appears from the record in this case that the defendant, Minnie J. Nielson, on November 27, 1900, received from the then superintendent of public instruction a normal certificate under the provisions of § 738, supra. The result of the examination taken by her is indorsed on the certificate. It appears therefrom that she was examined in twenty-four different subjects, including methods of teaching, history of education, pedagogy and psychology. It also appears that in the subjects enumerated she received very favorable marks. The record also discloses that on December 8, 1902, the then superintendent of public instruction issued a professional certificate to the defendant. The certificate refers to the previous normal certificate issued to the defendant and recites that she has spent two years in study at the state university, and performed twelve years of successful work as a teacher. The certificate states that the defendant has "given satisfactory evidence that she possesses the necessary qualifications of moral charac-

ter, skill, and education to instruct and properly manage any high school of the state;" and that, therefore, the said superintendent of public instruction has "granted to the said Minnie Jean Nielson this *professional certificate*, which shall be valid for life, and which authorizes the holder to teach in any of the common or high schools of the state." This latter certificate was concededly the highest certificate issued in this state at the time it was issued, and at all times between that date and July 1, 1911.

Chapter 266, Laws 1911, repealed the former provisions relative to teachers' certificates, and provided for the issuance in the future of teachers' certificates of the following classes:

1. Second-grade elementary certificate.
2. First-grade elementary certificate.
3. Second-grade professional certificate.
4. First-grade professional certificate.

The second-grade elementary certificates authorizes the holder to teach in any grade in the rural and graded schools up to and including the eighth grade. Comp. Laws 1913, § 1360. The first-grade elementary certificate authorizes the holder to teach in any grade in any school up to and including the eighth grade, and in the ninth grade in schools doing not over one year of high school work. Comp. Laws 1913, § 1361. The second-grade professional certificate qualifies the holder to teach in any of the common, graded, or high schools of the state, except in the high school departments of schools doing four years of high school work. Comp. Laws 1913, § 1362. The first-grade professional certificate qualifies the holder to teach in all the common, graded, and high schools of the state. Comp. Laws 1913, § 1363.

Manifestly the changes made in the former law as disclosed by § 1105, supra, do not indicate any intention on the part of the legislature to disqualify those then holding a teacher's certificate of the highest grade issued in this state from holding the office of superintendent of public instruction. But it is contended that inasmuch as the same legislature also provided for new forms and grades of teachers' certificates, these latter provisions must be read in connection with, and in effect become a part of, § 1105, supra. The plaintiff therefore contends that since July 1, 1911, the first-grade professional certificate

as defined by § 1363, supra, is the highest grade teacher's certificate issued in this state, and that inasmuch as the defendant does not hold such certificate, she is ineligible to the office of superintendent of public instruction. Assuming, but not deciding, that plaintiff is correct in his contention that § 1105, supra, must be construed in connection with §§ 1361–1363, Comp. Laws 1913, we are nevertheless of the opinion that it does not lead to the result which he claims. It is a cardinal rule of statutory construction that statutes will be construed as prospective only, unless an intent to the contrary clearly appears. It has been said "that a law will not be given a retrospective operation, unless that intention has been manifested by the most clear and unequivocal expression." And in another case: "The rule is that statutes are prospective, and will not be construed to have retroactive operation unless the language employed in the enactment is so clear it will admit of no other construction." Lewis's Sutherland, Stat. Constr. 2d ed. § 642. The legislature clearly intended the provisions of the 1911 law relative to teachers' certificates to apply to the future. There was no intention to abrogate or annul, or affect the standing of, professional certificates granted under the former law, or to require holders of such certificates to requalify under the new law. It frequently happens that the legislature prescribed new standards and requirements for admission to the different professions. That has been true of the legal profession. The requirements for admission to the bar in this state are to-day far more stringent than they were some years ago, yet it would be absurd to say that the certificates of admission to the bar issued to-day are "higher" than the certificates issued when the requirements for admission were less stringent. Of course, all certificates of admission to the bar are of equal standing and entitle the holders thereof to the same rights and privileges. That is also true of professional life certificates issued to teachers in this state prior to July 1, 1911, and *first-grade* professional life certificates issued under the law which became effective July 1, 1911. These two certificates are of equal standing. By their terms they entitle the holders to exactly the same privileges, *viz.*, to teach in any of the common or high schools of the state, without further examination. It also appears that this is the construction which has been placed upon this statute by those who have occupied the office of superintendent of public instruction,

including the plaintiff himself. For it appears from the record herein that the plaintiff has at no time sought to requalify under the law which became effective July 1, 1911, but has contented himself with the qualification made prior to July 1, 1911, under the same section under which the professional certificate has issued to the defendant in this case. We are of the opinion that the defendant at the time of her election was and now is the holder of a teachers' certificate of the highest grade issued in this state.

The plaintiff asserts, however, that the professional certificate held by the defendant is void for the reason that it was issued to her without examination. We have already referred to the terms of the statute under which the certificate was issued. We have also referred to the normal certificate issued to the defendant some two years before the professional certificate was issued, and the indorsement thereon of the marks received by the defendant in the examination held as a basis for issuing such certificate. The examination papers were doubtless available to the superintendent of public instruction who issued the professional certificate. Under the terms of the statute the superintendent of public instruction was the judge of the extent of the examination to be given to applicants for professional certificates, and he was invested with power and discretion to determine whether the applicant had the qualifications required by the statute. See Van Dorn v. Anderson, 219 Ill. 32, 36, 76 N. E. 53. The presumption is that he did his duty and issued certificates only to those whom he found to be properly qualified to receive them. The record shows that the defendant had been actively engaged as a teacher for some twelve years before she received the professional certificate, and that since that time she has been continually engaged either as a teacher or county superintendent of schools. The defendant acted under the certificate for more than sixteen years before she was elected to the office of superintendent of public instruction, and during this time the validity of the certificate has not been questioned.

The statute provides a plain, speedy, and adequate method for revocation of teachers' certificates. Comp. Laws 1913, §§ 1374, 1375. If the plaintiff in good faith believed that the certificate held by the defendant was invalid and properly subject to revocation, why did he fail to institute proceedings for revocation while he was at the head of

the educational department of the state? His failure to act, then, is somewhat significant, and might well be held to estop him from speaking now. Such was the holding of the supreme court of Illinois in an analogous case. See Van Dorn v. Anderson, supra. We do not, however, place our decision on this ground. There is another and controlling reason why the attack upon the certificate must fail. The superintendent of public instruction is a constitutional officer. Under the law it was part of his sworn duty to determine what persons were qualified to receive professional teachers' certificates. In the performance of that duty he determined that the defendant was so qualified, and he issued to her a certificate in kind and form as prescribed by law as formal evidence of his determination, and he entered upon the proper record in his office an entry of such determination. It seems self-evident that the certificate or commission so issued ought not to be subject to collateral impeachment. And such is the rule supported by the overwhelming weight of authority. Union School Dist. v. Sterricker, 86 Ill. 595; Doyle v. School Directors, 36 Ill. App. 653; Van Dorn v. Anderson, 219 Ill. 32, 76 N. E. 53; Kimball v. School Dist. 23 Wash. 520, 63 Pac. 213; State ex rel. Lindburg v. Grosvenor, 19 Neb. 494, 27 N. W. 728; Wells v. School Dist. 41 Vt. 353.

Inasmuch as we are of the opinion that the defendant is possessed of the qualifications prescribed by § 1105, Comp. Laws 1913, it becomes unnecessary to express any opinion upon the constitutionality of that section.

The judgment appealed from must be affirmed. It is so ordered.

GRACE, J. I concur in the result.