STATE OF WYOMING, EX REL. LEONA L. PAPE,
*Plaintiff in Error,*

v.

ROSALIE E. HOCKETT, JAMES MICKELSON,
CARROLL NOBLE, and JAMES JENSEN,
*Defendants in Error.*

(No. 2293; Feb. 26, 1945; 156 P. 2d 299)

146

148

For the Plaintiff in Error the cause was submitted upon the brief and also oral argument of *Mr. W. A. Muir*, of Rock Springs, Wyoming.

For the Defendants in Error the cause was submitted upon the brief of *Mr. G. B. Hockett*, of Pinedale, Wyoming, and *Mr. Ivan S. Jones*, of Kemmerer, Wyoming, and oral argument by *Mr. Jones*.

154

## OPINION

BLUME, Chief Justice.

This is an action in quo warranto brought by the State of Wyoming on the relation of Leona L. Pape against Rosalie E. Hockett and the Board of County Commissioners of Sublette County, Wyoming, to determine the right of Rosalie E. Hockett to hold the office of County Superintendent of Sublette County, Wyoming. The trial court found in favor of Rosalie E. Hockett, whose name before her marriage was Rosalie Sielaff, and from that judgment the relator, Leona L. Pape, has appealed.

It appears that in the election held in the year 1942 the relator and Mrs. Hockett were both candidates for the office of County Superintendent of Sublette County. Mrs. Hockett received a total of 617 votes as against 486 votes which were cast in favor of the relator, and Mrs. Hockett was, accordingly, declared elected and a certificate of election was issued to her. She duly qualified, took her oath and filed a bond on the first Monday in January, 1943. It is claimed by the relator in her petition that Mrs. Hockett did not possess the

requisite qualifications to be nominated or elected to the office, and that, accordingly, the relator, who was the incumbent of the office of County Superintendent of Sublette County from 1939 to 1943, was entitled to hold over. It appears from the evidence that Mrs. Hockett is a graduate of the Iowa Teachers College, a standard school; that she graduated with the degree of Bachelor of Arts, with 183 quarter hours credit. She taught in a rural school in Iowa during the school year of 1927 to 1928; came to Wyoming in 1928, taught in the high school at Big Piney during that school year, and was principal of that school from 1929 to 1931. She received a certificate from the State Superintendent of Public Instruction in 1928 authorizing her to teach in the high school, and in 1929 received what is called an Administrative Certificate I which authorized her to act as principal in the high school of Big Piney. She married in 1931 and did not teach thereafter except to act as a substitute teacher in the school of Big Piney, and later on as a regular substitute in the schools of Pinedale in this State. She was a candidate against the relator in the election of 1938 but was evidently defeated. At the time of filing her certificate of nomination she filed the Administrative Certificate I, heretofore mentioned, in the office of the County Clerk, attaching it to her nomination certificate. It remained in the office of the County Clerk until 1942. At that time the teaching certificate was separated from the nomination certificate, filed in 1938, but was attached to her nomination certificate filed in 1942 in the office of the County Clerk of Sublette County. In November, 1942, after the election, Mrs. Hockett applied to the State Superintendent for a certificate called First Class Rural Administrative Certificate. Pursuant to such application the State Superintendent of Public Instruction issued to Mrs. Hockett on or about January 1, 1943, what is called a Provisional First

Class Rural Administrative Certificate. That certificate was filed in the office of the County Board of Commissioners of Sublette County on January 7, 1943. Other facts will be stated in connection with the discussion of the various points raised by the relator herein:

I. Counsel for the relator charges that when the State Superintendent of Public Instruction on or about January 1, 1943, issued to Mrs. Hockett a Provisional First Class Rural Administrative Certificate, "she committed a flagrant violation of the rules and regulations adopted by the State Board of Education." We are not at all satisfied that the charge is justified. Counsel bases it mainly on the fact that she did not then have evidence that Mrs. Hockett had been engaged in teaching or in educational work since 1931, but if we understand it, and as the rule itself indicates, provisional or temporary, or other like certificates are not particularly intended to be issued because of previous teaching, but because it is thought that the person receiving such certificates is in fact qualified in general or will, in a comparatively short period of time, be qualified. Counsel for relator further states that the rules of the State Board of Education forbade the issuance of a provisional certificate. The matter is in a state of confusion. Relator introduced four different printed sets of rules, those in effect in 1925, 1929, 1933 and 1937, and we cannot tell whether all or some portion of all were in force and effect since the rules make no statement in reference thereto. Counsel for relator appears to consider them all in force and cites from them indiscriminately. He relies upon the provision of the rules of 1925 which state that, "no provisional administrative certificate shall be granted." But he has completely overlooked that this very provision was expressly omitted in the rules of 1929. The Commissioner of Education in his testimony believed

that the power to issue such certificates existed in 1943 and cited instances in which such certificates had been issued. The State Board of Education seemingly took the same position when in April, 1943, it approved of the action of the Commissioner of Education. These positions seem to be justified, in view of the fact that Section 99-129, Rev. St. 1931 provide that the State Board of Education shall provide, among other certificates, for "special certificates," and we presume that provisional certificates would be included within that term. The power to issue such certificates may, of course, be abused but if such power exists it can hardly be said to be abused when a provisional certificate of the fourth grade, such as a first class rural administrative certificate, is issued to a graduate from a standard and noted teachers college, with the degree of Bachelor of Arts, with 183 quarter hours credit and with four years teaching experience, three of which were in the very county for which the provisional certificate in this case was issued. We should hardly be justified in saying the contrary, merely because the teacher acted only as a substitute for the preceding ten years any more than we would be entitled to say that a lawyer would lose the knowledge of his art when for one reason or another he would during such period be compelled to abstain from his profession except only at regular intervals.

Of course, the possession of the provisional certificate by Mrs. Hockett did not help her in this case if she was required to hold a certificate in force at the time when she was nominated and elected . In some jurisdictions it is held that a candidate for office must be qualified to hold it at the time of the election and in other judisdictions it is held that it is sufficient if the candidate is qualified at the time of entering upon the duties of the office. 46 C. J. 938 ,24 R. C. L. 571. In 47 Am. Jur. 317, it is stated that:

"There is some divergence of opinion as to whether the qualifications are to be judged as of the time of election or of induction into office. The question has arisen most frequently where the statute uses the word 'eligible'. The more general rule seems to be that they are to be judged as of the time when the candidate takes office, and that a person disqualified at the time of his election may assume the office provided the disqualification is removed before the term of office begins."

Counsel for defendant claims that this is the rule which should be applied in this case, particularly since Section 30-901, Rev. St. 1931, does not use the term "eligible," and that the required qualification of County Superintendent, mentioned in that Section, is directory. We do not think it necessary to decide the point, and we shall proceed to consider the effect of the possession by Mrs. Hockett of her administrative Certificate I, issued to her previously, and in that connection we must throughout bear in mind the rule stated in 46 C. J. 937, which is as follows:

"Statutes imposing qualifications should receive a liberal construction in favor of the right of the people to exercise freedom of choice in the election of officers. Furthermore, these qualifications provided by the legislature are construed strictly and will not be extended to cases not clearly within their scope." .

II.   Section 30-901, Rev. St. 1931, provides in so far as material herein: "There shall be in each organized county a superintendent of public schools, who shall, on or before time of his nomination and election as said superintendent, file with the county clerk his or her Wyoming teacher's certificate, or certified copy thereof, of as high a rank as first class in full force and effect." The State Board of Education in its rules has attempted to provide for the qualifications of a county superintendent requiring that he or she must possess a certificate denominated as first class rural administrative. It has attempted to make such requirement under

the provisions of Section 99-132, which, in so far as material here, provides: "The state superintendent of public instruction shall issue certificates to superintendents, supervisors, principals, and teachers, on the recommendation of the State Board of Education." It is strenuously contended by counsel for the defendant herein that the legislature has no power to delegate to any other officer or board the power to determine the qualifications of a public officer. This contention is of importance. And other peculiar situations appear. The provision of Section 30-901, supra, was first made by Chapter 34 of the Session Laws of 1925. There was, when that Chapter was passed, no provision anywhere for a certificate known as "first class." Section 99-121, Rev. St. 1931, passed in 1919, provided for the following certificates, namely, (1) elementary city school certificates; (2) rural school certificates; (3) high school certificates; (4) administrative certificates; (5) special certificates. No such certificates as first class, accordingly, appears, nor had the State Board of Education made any provision in its rules for any such certificate. The only so-called first class certificate which appears in the statutes of this State was under the provisions of Section 2013, Compiled Statutes of 1910, under which, broadly speaking, the holder thereof had to have substantially a high school education. That Section of the 1910 Statutes apparently was never expressly repealed but probably was impliedly repealed thereafter when the provisions of Chapter 99 of the Wyoming Statutes were first enacted, which was in 1917, and amended in 1919. Counsel for the defendant, accordingly, contends that the legislature, when it passed the statute of 1925, possibly had in mind the first class certificate mentioned in Section 2013 of the Compiled Statutes of 1910, and that since that is repealed, no statutory qualification for county superintendent exists. After the statute of 1925, above men-

tioned, was passed, the State Board of Education, as mentioned in the rules of 1925, undertook to construe it, stating on page 16 of the Rules of 1925:

"The State Board of Education has interpreted the First Grade Certificate referred to in Chapter 34, Session Laws 1925, to mean a Class A Certificate with 4½ hours in Rural Administration."

Subsequently, to make the interpretation above mentioned more plausible the State Board of Education change the name of Class A, and labeled it "First Class Rural Administrative Certificate," though Section 30-901, supra, makes no mention of any such certificate. The rules of the State Board of Education provide for fifteen different teachers' certificates, and for four different administrative certificates, namely, that of advanced administrative, the highest, administrative I, the next highest, elementary administrative, the next highest, and first class rural administrative, the next highest, so that the first class rural administrative certificate, mentioned in the rules, is in fact a certificate of the fourth and not of the first class. We are inclined to agree with the Board that the legislature did not intend that a county superintendent of schools shall necessarily be a college graduate but just what the legislature intended by its provisions made in 1925 is in doubt. We do not think it necessary in this case to resolve that doubt or to determine the question of the right of the legislature to delegate the power of prescribing the qualifications for an office. For the purposes of this case, and for that purpose only, we shall assume that the Board had the right to fix the minimum qualifications for county superintendent of schools and that its requirement governs in so far as consistent with the provisions of Section 30-901, supra.

The power granted to the State Board of Education must in any event be construed in pari materia with

Section 30-901, supra. Counsel for relator assumes that a county superintendent must have the certificate and the exact certificate mentioned in the rules of the State Board of Education, namely a First Class Rural Administrative Certificate, but that is a fundamental error. Section 30-901 requires that a county superintendent of schools must have a 'certificate of *as high a rank as first class*. Consequently, if the certificate denominated Administrative Certificate I, held by Mrs. Hockett, is of as high a rank as that required for county superintendent of school by the State Board of Education ,that is clearly sufficient and whether it is, or is not, of as high a rank, is, of course, a question of fact. The State Superintendent of Public Instruction testified that Administrative Certificate I is equivalent to a First Class Rural Administrative Certificate. The testimony of the Commissioner of Education was even stronger. He had written a letter to Mrs. Hockett in 1942 that she needed nine educational credits, but he testified that this requirement was made so as to subserve "the letter of the law down to the last technicality," but that in fact Mrs. Hockett had complied fully with the spirit of the law; that she had an A. B. degree with twice the credits than 70% of the county superintendents have; that the certificate of Mrs. Hockett is considerably higher than a first class Wyoming teacher's certificate; that she had nearly twice the credits than those of the relator. Counsel object that the State Superintendent of Public Instruction was permitted to draw the conclusion that the certificate held by Mrs. Hockett was equal to the certificate required. However, the Commissioner of Education was permitted to answer substantially the same question without objection. Moreover, it would seem that it was a matter of scientific inquiry. It is not a matter of common knowledge and we see no reason why experts, as the witnesses were, should not be permitted to express their opinion

on the subject. Moreover, the court had before it the various rules of the State Board of Education. We have already noted that the so-called First Class Rural Administrative Certificate is actually a certificate of the fourth class, whereas Administrative Certificate I held by Mrs. Hockett is of the second class. We think, accordingly, that the court had the right to find that a certificate which is two grades above that required by the State Board of Education for a county superintendent of schools is of as high rank as the latter. To say the contrary would seem, on its face, to be a contradiction in terms. The mind of a rural child is not so much different from the mind of a child in a town or city that qualification higher than that required by the board of county superintendents should be held by us as a matter of law to disqualify the person possessing such higher qualification for such position.

III. Administrative Certificate I, held by Mrs. Hockett as above mentioned, was originally issued on September 1, 1929. She had alleged in her answer filed in this case that she held this certificate. The reply admits it, stating: "Plaintiff admits that a Wyoming Teacher's certificate, a copy of which is marked Exhibit "A" and attached to defendant's answer, was issued to defendant by the State Superintendent of Public Instruction of Wyoming on the 1st day of September, 1929." Relator did not then claim that the certificate was not valid as least for four years after it was issued. Counsel for the relator now claims that it was issued unlawfully, in view of the fact that Mrs. Hockett did not then have three years experience as a teacher as required by the rules of the State Board of Education. That is clearly a collateral attack on the certificate which may not be made in this action. It is stated in 56 C. J. 377:

"A teacher's certificate is prima facie evidence of the teacher's qualifications, and of the fact that the board

or committee issuing such certificates have properly performed their duty as to the manner and requisites of their issuing it, and in the absence of fraud cannot be collaterally impeached, as for example, in a suit by a teacher to recover his wages after being dismissed, * * *, or in a suit between contestants to try title to the office of state superintendent of public instruction, or county superintendent of schools."

In the case of McDonald v. Nielsen, 43 N. D. 346, 175 N. W. 361, the certificate held by one who was elected as state superintendent of public schools, was attacked on the ground that the certificate was issued without the required examination. The court said:

"The superintendent of public instruction is a constitutional officer. Under the law it was part of his sworn duty to determine what persons were qualified to receive professional teachers' certificates. In the performance of that duty he determined that the defedant was so qualified, and he issued to her a certificate in kind and form as prescribed by law as formal evidence of his determination, and he entered upon the proper record in his office an entry of such determination. It seems self-evident that the certificate or commission so issued ought not to be subject to collateral impeachment. And such is the rule supported by the overwhelming weight of authority."

In the case of Wendt v. Waller, 46 N. D. 268, 176 N. W. 930, a certificate held by one who was elected to the office of county superintendent of schools was attacked as having been issued illegally. The court said in part:

"We do not understand counsel to contend that either of the professional certificates have been fraudulently issued to the defendant; but it is argued that the facts with reference to the defendant's qualifications to receive the certificates show that they could not have been legally issued. Obviously, if this argument prevails, this court would be required to pass upon the qualifications of persons to receive the certificates designated in the statutes. The Legislature, however, imposed this duty upon the state superintendent of public instruction, and

when that officer has determined the existence of the necessary qualifications to entitle one to a certificate, such determination cannot be reviewed by a judicial tribunal except for fraud."

In State ex rel. v. Dodson, 169 Tenn. 178, 83 S. W. 2d 558, the court said in part:

"The General Educational Law, chapter 115, Pub. Acts 1925, designated the qualifications of a county superintendent, and vests the exclusive authority in the state board of education to examine the applicant and issue to him a certificate if they find that he is qualified. The act confers no authority upon the courts to review their action in the premises, and, unless the board acts arbitrarily, corruptly, or fraudulently, the courts are powerless to review their decisions. This is necessarily so with respect to all licensing boards of this character where the power to review is not conferred upon the courts. * * * In the absence of an affirmative allegation in the certificate that the act of 1929 was not observed by the board when the certificate was renewed in 1933, it will be conclusively presumed that the board performed their duty in this respect. The certificate cannot be collaterally attacked by proof that it was erroneously issued. The only recourse in this situation would be an application to the board to revoke the certificate."

IV. Counsel for the relator makes a further attack on the certificate just mentioned. Mrs. Hockett testified that she was unable to find the certificate issued to her on September 1, 1929, and wrote to the State Superintendent of Public Instruction for a copy. She received and filed in the County Clerk's office in 1938 the following certificate which, by the way, was introduced in evidence by the relator:

"No. 47452
Duplicate

STATE OF WYOMING
Department of Education
(seal)
Administrative Certificate
This Certifies That Rosalie Sielaff Hockett having met

all the requirements as prescribed by the STATE BOARD OF EDUCATION, is hereby granted this Administrative I CERTIFICATE which entitles the holder thereof to be Superintendent or Principal of any school in the STATE OF WYOMING for Life from the date of issuance.

Issued this first day of September, 1929.

(Signed) JACK R. GAGE,

State Superintendent of Public Instruction"

It may be noted that the certificate purports to be a duplicate and was signed by Jack R. Gage, as Superintendent of Public Instruction. The evidence in the record shows that Jack R. Gage was not Superintendent of Public Instruction 1929 and hence it is argued by counsel for relator that it is not the certificate received by Mrs. Hockett or a certified copy of the certificate as required by Section 30-901, supra, and that, accordingly she did not comply with the requirements of that Section of the law. The objection appears to be a technical one, particularly in view of the fact that the reply of the relator admits that the certificate was issued to Mrs. Hockett. It would seem that the certificate is not a duplicate, nor is it a certified copy thereof, though it was probably intended as such, but it unequivocally is some sort of a certificate. If it is not a duplicate or a certified copy then it must necessarily be an original one. The fact that it was dated September 1, 1929, cannot be considered of importance in this case. It was at least valid as of the time when it was actually issued and signed in 1938, and the rules as to collateral attack would seem to be as applicable to it as to any other certificate issued by the State Superintendent of Public Instruction.

V.   The rules of the State Board of Education provide that :"All certificates lapse in four years if holders are not engaged in teaching or other educational work during that time. Such certificates may be restored as indicated in 2 above," namely, getting nine quarter

hours credit in professional subjects. It is, according-
ly, contended by relator and she pleaded in her reply
that the certificate held by Mrs. Hockett was not valid
when she became a candidate for county superintend-
ent. On the other hand, counsel for Mrs. Hockett con-
tend that the only method by which the certificate could
be nullified is by the proceeding for revocation of it as
specifically provided by statute. The certificate was
introduced in evidence by the relator. It is her own evi-
dence offered in this case. The certificate states that
it is good for life. It does not purport to be subject
to any conditions or to any rules or regulations of the
State Board of Education. It is absolute and uncondi-
tional. It would seem that the rule of collateral attack
heretofore mentioned is just as applicable under these
circumstances, as under the circumstances previously
stated.

It may not be amiss, however, to discuss the remain-
ing points argued by counsel for the relator herein. It
is shown by the evidence in this case that Mrs. Hockett
taught school as a substitute teacher and was engaged
in other educational work to a more or less extent dur-
ing most of the years from 1931 to and including 1942.
No period of four years elapsed during which she did
not teach and she was engaged as a regular substitute
during several years prior to 1942. Counsel for relator
ridicules the amount of educational work which she did
and states that she taught as an emergency teacher
from 1932 to 1942 for only 17 days and claims that this
cannot be considered as such educational work as would
keep her certificate in force. The State Superintendent
and the Commissioner of Education testified that act-
ing as a substitute teacher keeps the certificate in force.
The trial court evidently so considered it and we are
unable to hold the contrary. Counsel's argument on
that point should be directed to the State Board of Edu-
cation and not to this Court. The rule does not specify

the amount of educational work which is required. It might be little or much. That was a matter in the discretion of the Board with which this Court is not concerned. The Board could have left out the requirement altogether. Counsel for relator contends that to be "engaged" in education means to be occupied therein regularly or constantly. That doubtless would be true in some situations. We are not satisfied that that construction must be given to the rule above mentioned. It would have been easy enough to have inserted "regularly" or "constantly" if that had been considered necessary. It is not an unnatural construction of the word "engaged" to hold that whenever she taught she was then engaged in educational work. In view of the rule heretofore mentioned that matters of disqualification should be strictly construed, we would not be warranted in reversing the trial court in this connection.

The rules of the State Board of Education also provide that: "Substitute teachers may keep certificates in force by doing the professional reading required of other teachers and registering certificates with the county superintendent." The first part of this rule standing by itself is meaningless in view of the fact that it does not state what other teachers are required to read. Referring, however, to page 4 of the Rules of 1937, we find it stated that, "All teachers are required to do *directed* professional reading each year. Certificates cannot be registered unless this is done." There is no evidence in this case that any professional reading was directed to be done. A prima facie case was made for the defendant when her life certificate was introduced in evidence, hence the burden to show that professional reading was in fact directed to be done and was not done by the defendant was on the relator and this burden has not been met. Moreover, the eligibility of the defendant to the office of county super-

intendent is presumed after she was elected. 46 C. J. 937.

Mrs. Hockett, however, did not register her certificate with the county superintendent as mentioned in the foregoing rule. But the rule does not purport to establish an exclusive method by which a certificate may be kept alive as is apparent from the fact that one who is not a substitute teacher may nevertheless by doing educational work keep the certificate in force, and since no rule exists for such a case, approval by the educational authorities as to the educational work done would seem to be sufficient. Such approval was virtually given in this case since the State Superintendent of Public Instruction and the Commissioner of Education testified that the work of substituting as teacher keeps the certificate alive. After all, it would seem that the registration of the certificate, as provided, is merely one method of proof and could at most be merely prima facie evidence of the fact that educational work has been done in the meantime. The fact of actually doing such work would seem to be the principle matter. The mere registration of the certificate would seem at best, under the circumstances in this case, to be merely directory . It is stated in Kobylarz v. Mercer, 130 N. J. L. 44, 31 Atl. 2d 208, that "It is elementary that public office may not be vacated by judicial decree unless the disqualification be clear and imperative." We do not feel justified in this case in holding that it is either clear or imperative. On the contrary, we are inclined to think that we would merely outrage the expression of the public will should we hold that Mrs. Hockett, with an education much greater than that of the average county superintendent, is disqualified for the reason here urged by the relator.

VI. Pursuing the subject of registration with the county superintendent further, our attention is called

to Section 99-131, Rev. St. 1931, which provides as' follows:

"All certificates must annually be registered at the office of the county superintendent of schools in the county wherein the holder shall intend to teach the ensuing year. Before such certificates can be registered the holder of each must furnish satisfactory evidence of having complied with the rules and regulations of the state board of education with reference to professional study. Failure to comply with the registration law shall invalidate the holder's certificate and such person shall not be entitled to receive pay for teaching, provided, that exception to this registration may be permitted by the state board of education upon the written application of a district board."

The rules of the State Board of Education follow the statute closely but leave out the provision that "failure to comply with the registration law shall invalidate the holder's certificate." Counsel's argument is far from clear as to what claim he makes by reason of these provisions. Section 30-901, supra, states where the certificate of a candidate for county superintendent must be filed. It does not require that the candidate must have filed his or her certificate in the office of the county superintendent. Section 99-131, supra, and, in fact, the whole of Chapter 99 deals primarily with teachers and their qualifications. The requirement that the certificate shall be filed each year with the county superintendent is for those who intend to teach. The statute is plain and unequivocal on that point. It does not say that the certificate must be registered when the teacher does not intend to teach. If that were the meaning there would be little sense in the regulation of the state board that a certificate would be good for nearly four years though no teaching or other educational work has been done in the meantime. Take for instance a teacher who has been sick for three years but is able to and wants to teach the fourth year. The certificate held by such person, if good otherwise, would be good, we

think, though not registered during the three years of illness. Again, take the case of a teacher coming to teach in this State, for instance from Nebraska, during the middle of the school year. She has not registered her certificate previously, and yet it can hardly be claimed that when the certificate is filed when the teaching commences it would not be valid merely because of the failure to register it previously. We think the requirement is limited to those who intend to teach and probably to those who want to engage in regular teaching . Any other construction would seem to be harsh, even leaving out of consideration the rule of the State Board of Education just mentioned. Section 99-131, supra, is not directed to county superintendents. The main aim of the registration requirement seems to be, first, to give the various school boards an opportunity to examine the certificate before hiring an applicant, and, second, to prevent the payment of money to teachers unless such certificate has been registered, just as Section 30-904 is specifically aimed at preventing county superintendents from drawing any pay unless a proper certificate is filed with the Board of County Commissioners. Good reasons exist for applying the statute and the rules pursuant thereto to those engaged in regular teaching. Seamonds v. School District, 51 Wyo. 477, 68 P. 2d 149. But when the reason of the rule ceases the rule itself ceases, and we cannot see why that rule should not be applied in the case at bar. The people in electing an officer are interested in knowing the qualifications of the candidate and for that reason Section 30-901, supra, has provided for the filing of the certificate in the office of the county clerk. It has even been held that the requirement of such filing is directory, intended for the information of the people and cannot be questioned after the election. Huffins v. Gold, 154 Tenn. 576, 288 S. W. 353. If Section 99-131, supra, were held to be applicable in this case then a

county superintendent could perpetuate himself or herself in office by refusing to hold that satisfactory evidence has been presented to him or her by one holding a certificate, of compliance with the rules or regulations of the State Board of Education as mentioned in that Section, or, at least, make it very difficult and disagreeable for anyone else who might be suspected of aspiring to that office as against the incumbent. In Wynne v. State, 67 Miss. 312, it appears that the certificates for teachers were issued by the county superintendent who, accordingly, could by refusing to issue a certificate prevent anyone else from becoming a candidate for that office. The court held that such was never the intention of the legislature and that the statute requiring the holding of a first grade certificate by a candidate for county superintendent was invalid for that reason alone. So in this case we cannot believe that the legislature intended that one who might want to become a candidate for county superintendent should be placed at the mercy of the incumbent of that office. Chapter 30 of the statutes deals with county superintendents. Chapter 99 deals primarily at least, as stated, with teachers, and in the absence of a clearer expression of the legislature, we do not feel justified in reversing the trial court in its holding as it necessarily must have held, that Section 99-131, supra, and the rules of the State Board in conformity therewith, do not apply in this case, particularly in view of the rule of law relating to qualification for office, heretofore mentioned.

VII. Counsel for relator seems to claim that although Mrs. Hockett filed the teacher's certificate heretofore mentioned in connection with her certificate for nomination, nevertheless the certificate was not properly filed with the county clerk within the meaning of Section 30-901, supra. It was filed in the office of the county clerk, and whether it was filed separately or

not is not and should not be of such importance as to cause her disqualification for the office.

Finding no reversible error in the record, the judgment of the district court should be and is affirmed.

Affirmed.

RINER, J., concurs.

KIMBALL, J., concurs in the result.