Orvalle SNELL and Ellen E. Snell, husband
and wife, Appellants (Peti-
tioners below),

v.

L. J. RUPPERT, Appellee
(Respondent below),

and

The Board of County Commissioners in and
for Sheridan County, Wyoming,*
(Respondent below).
No. 4484.

Supreme Court of Wyoming.

Oct. 31, 1975.

* The board is not a party to this appeal.

Charles R. Spratt, Buffalo, signed the brief and appeared in oral argument on behalf of appellants.

W. K. Archibald, Sheridan, signed the brief and appeared in oral argument on behalf of appellee, L. J. Ruppert.

Before GUTHRIE, C. J., and RAPER and ROSE, JJ.

RAPER, Justice.

The respondent-appellee, Ruppert, seeks the establishment of a private road by pro-

ceedings before the county commissioners of Sheridan County, Wyoming, pursuant to § 24–92, W.S.1957, C.1967:

"Any person whose land shall be so situated that it has no outlet to, nor connection with a public road, may make application in writing to the board of county commissioners of his county at a regular session, for a private road leading from his premises to some convenient public road. * * *"

Ruppert in 1963 purchased a lot near Story, Wyoming, containing about two and one-half acres of land. It was part of a subdivision created early in this century but had no access to a public road because of other lots of the same subdivision that intervene to the north and Piney Creek to the west and south. The other lots have permanent improvements on them and the banks of Piney Creek are too steep for a road. The appellants-petitioners Snell own agricultural acreage that adjoins to the

east. Ruppert is land-locked; it is acknowledged that the best way for him to gain access to the public road is by way of a north-south 30-foot by 300-foot private road on and along the west boundary of the Snell land. A road could be put across lots between the Ruppert lot and the public road but the terrain is unsatisfactory and in doing so, the expense would be great and the value of those lots would be diminished because of the location of presently existing improvements along with the necessity to cut down trees, which lend value to properties in the Story community.

Ruppert had been trying for several years to negotiate with the Snells for purchase of a road easement, without success. They would not sell at any price but offered to buy out Ruppert at their price which he refused to consider.

Proceedings, as provided by § 24–92, W. S.1957, C.1967,[1] ensued. The administra-

---

1. The entire statutory section is as follows: "Any person whose land shall be so situated that it has no outlet to, nor connection with a public road, may make application in writing to the board of county commissioners of his county at a regular session, for a private road leading from his premises to some convenient public road. Said applicant shall give at least thirty days notice in writing to the owner or resident agent or occupant of all lands over which said private road is applied for, of the time of making such application to such board. If the owner of such land be a nonresident, and there be no resident agent upon which personal service can be had, then such notice may be published in some newspaper published in the county for three weeks, the last publication shall be at least thirty days before the hearing of said application, at which time all parties interested may appear and be heard by said board as to the necessity of said road, and all matters pertaining thereto. Upon the hearing of said application, whether the owner ·or others interested appear or not, if the said board shall find that the applicant has complied with the law, and that such private road is necessary, said board shall appoint three disinterested freeholders and electors of the county, as viewers and appraisers, and shall cause an order to be issued directing them to meet on a day named in such order on the proposed road, and view and locate a private road according to the application therefor, and to assess damages to be sustained thereby, and if for any reason such viewers and appraisers are unable to meet at the time set by the board to view said proposed road, they may fix some other date, but shall be required to give notice in writing to the owner or resident agent or occupant of said lands over which said road is proposed to be laid of the time and place where such viewers will meet, at least ten days before viewing such road, at which time and place all persons interested may appear and be heard by said viewers. Before entering upon their duties such viewers shall take and subscribe to an oath that they will faithfully and impartially perform their duties under their said appointment as viewers and appraisers. Such viewers shall then proceed to locate and mark out a private road in accordance with said application, not exceeding thirty feet in width from a certain point on the premises of the applicant to some certain point on the public road, so as to do the least possible damage to the lands through which such private road is located, and they shall also at the same time assess the damages sustained by the owner or owners over which such road is to be established and make full and true returns, with a plat of such road to the board of county commissioners."

tive proceeding taken before the county commissioners was back and forth between the county commissioners and the district court on two previous occasions; we now consider what we shall for the moment refer to as the third appeal to the district court. The county commissioners ordered the private road established and fixed compensation to be paid by Ruppert to Snell. The district court affirmed. The case is before this court for the first time.

The Snells contend that there is no necessity for a taking of their land because Ruppert has a common-law way of necessity through the lots of the subdivision to the road which should be enforced by a civil action and not this administrative proceeding. The common-law rule they assert is that whenever a grantor conveys away a part of his property, he conveys with it whatever is necessary for the beneficial use of the land he conveys, including a way of ingress and egress over his remaining land, if not otherwise available. The way is presumed to have been intended by the parties. 25 Am.Jur.2d (Easements and Licenses) § 34.[2] Snell contends that even though the unity of title to the lots involved last existed in 1920, the intervening lots are still bound by the further rule set out in 25 Am.Jur.2d (Easements and Licenses) § 35:

" * * * if at one time there has been unity of title, the right to a way of necessity may lie dormant through several transfers of title and yet pass with each transfer as appurtenant to the dominant estate and be exercised at any time by the holder of the title. * * * "

There have been several individual transfers of title since 1920.

The question then before the court on this appeal is whether Ruppert is confined to the common-law remedy of forcing a way of necessity across the lots to his

north, having a common origin of unity of title with his or whether he has available to him the right to take a private road across the lands of a stranger to his title. Let us now trace the law of Wyoming.

Section 32, Art. I, Wyoming Constitution, provides as follows:

"Private property shall not be taken for private use unless by consent of the owner, except for private ways of necessity, and for reservoirs, drains, flumes or ditches on or across the lands of others for agricultural, mining, milling, domestic or sanitary purposes, nor in any case without due compensation."

Section 33, Art. I, Wyoming Constitution, supplements § 32 and states, "Private property shall not be taken or damaged for public or private use without just compensation."

In *Meyer v. Colorado Central Coal Co.*, 1928, 39 Wyo. 355, 271 P. 212, reh. den. 274 P. 1074, it was explained that:

"Constitutional provisions of the character appearing in sections 32 and 33, supra, are not unusual, especially in the western states of the Union. The states of Washington, Colorado, and Arizona, besides our own, have them. The courts of those states have considered the meaning of the phrase, 'way of necessity,' as it thus appears in their Constitutions, and it has been held that the Legislature may define them and establish procedure to make the right thereto available. [Citing cases.] * * * "[3]

Section 24–92 had its roots in §§ 32 and 33, Art. I, Wyoming Constitution.

With exceptions, Wyoming is governed by the common law. Section 8–17, W.S. 1957, provides as follows:

"The common law of England as modified by judicial decisions, so far as the same is of a general nature and not inap-

---

2. See 2 Thompson on Real Property, § 362, beginning at page 410, for a discussion of the rule.

3. Amongst the cases cited was *Grover Irrigation and Land Co. v. Lovella Ditch, Reservoir and Irrigation Co.*, 1913, 21 Wyo. 204, 131 P. 43, L.R.A.1916C, 1275, Ann.Cas. 1915D, 1207.

plicable, and all declaratory or remedial acts or statutes made in aid of, or to supply the defects of the common law prior to the fourth year of James the First (excepting the second section of the sixth chapter of forty-third Elizabeth, the eighth chapter of thirteenth Elizabeth and ninth chapter of thirty-seventh Henry Eighth) and which are of a general nature and not local to England, shall be the rule of decision in this state *when not inconsistent with the laws thereof*, and shall be considered as of full force, until repealed by legislative authority." (Emphasis added.)

 The common law having been adopted in this state, the courts may rely upon and follow the English decisions so far as they are not incompatible with the statute law. *Johnston v. Laird*, 1935, 48 Wyo. 532, 538, 52 P.2d 1219, 1220. If a statute covers a whole subject matter, the abrogation of the common law on the same subject will necessarily be implied. *Schlattman v. Stone*, Wyo.1973, 511 P.2d 959, 961; *Roberts v. Roberts*, 1943, 58 Wyo. 438, 461, 133 P.2d 492, 500. *Schlattman* goes on to hold that the common law obtains only when not changed by statutes and statutes take precedence where there is any inconsistency or conflict with the unwritten law.

 The whole concept of the exercise of eminent domain is the taking of property without the consent of the owner and this is anticipated by § 32 of Art. I of the Constitution, when it says, "Private property shall not be taken for private use unless by consent of the owner, except for private ways of necessity, * * * ." This is inconsistent with any concept of the common-law rule in regard to a way of

necessity; under the common law, there is present the implied consent of the owner that his grantee has an outlet from the property which he has conveyed. Another inconsistency rests within the anticipation of the Constitution and the statute that compensation be paid for the way in and out. A way of necessity in the common-law sense goes with the land and does not anticipate the payment of compensation. Section 24–92, W.S.1957, offers complete relief to the shut-in landowner and covers the whole subject matter.

 The Snells contend that a condition precedent to proceeding under the statute is that Ruppert must first proceed in a civil action to enforce a common-law way of necessity across intervening lots of the subdivision. There is no such condition imposed by the statute. We cannot stretch, extend, enlarge nor amend what the legislature has clearly said. *Lo Sasso v. Braun*, Wyo.1963, 386 P.2d 630, 632. While we need not consider the matter, there may be a practical reason why a civil action would not lie and it was observed by the trial judge at the district court hearings. In excess of 50 years has passed since the subdivision was created; title to lots has passed through several hands. The intervening lot owners could probably successfully raise the shield of the 10-year statute of limitations. Section 1–13, W.S. 1957, states:

"An action for the recovery of the title or possession of lands, tenements or hereditaments can only be brought within ten years after the cause of such action accrues."[4]

The eminent domain proceeding offers a realistic approach.[5] We hold that Ruppert proceeded properly.

---

4. By our holding here, we do not foreclose the possibility that a common-law way of necessity can be imposed in a proper case where the isolated landowner chooses that course. While not in point because it did not consider the statutory procedure and was a clear case against the granting of a way of necessity, *McIlquham v. Anthony Wilkinson Live Stock Co.*, 1909, 18 Wyo. 53, 104 P. 20, does ponder the granting or denial of a common-law way of necessity.

5. 2A Nichols, The Law of Eminent Domain, (Rev. 3rd Ed.) § 7.626, tells an interesting story of the development of the use of eminent domain to establish a private road leading from the land of an individual to the nearest highway when he had no means of ingress and egress in any other manner. There is a public interest in giving access by individuals to the road and highway network of the state as a part and an extension thereof for economic reasons and the

Earlier in this opinion it was indicated that this appeal is before us on what we would for the moment refer to as the third appeal to the district court. The course of the proceedings was more specifically that a first appeal was taken by Orvalle Snell because of an insufficient hearing before the board of county commissioners. The parties stipulated to a remand for a full hearing. Following that hearing, the board by its order established the road on the Snell land and fixed the compensation. That order was appealed by Orvalle Snell by a petition for review to the district court on the major grounds that the road should have been established across the lots once held in a unity of title along with the applicant's and the board of county commissioners had reduced the viewers' award. There were other grounds which, after examination, we do not consider meritorious and, as a matter of fact, the then counsel for the Snells argued that the only real issue before the district court was whether Ruppert had a common-law way of necessity over other lots of the subdivision and, therefore, could not take the Snell land and, of course, the board of county commissioners could not reduce the award. The district court found that the board of county commissioners had followed the proper procedures and affirmed it in all particulars, except that it had no power to reduce the award made by the viewers but remanded it:

"to the said Board of County Commissioners for a determination by the said Board as to whether or not the report filed by the Viewers and Appraisers is just in accordance with the requirements of Section 24–94, W.S.1957, C.1967, and if it is so determined, to enter its Order in accordance therewith, or to find that the report is unjust, and in that event, to appoint new appraisers and conduct further hearings in accordance with the afore-mentioned Statutes."

The board then on remand made a determination that the award was fair and just and entered a new order accordingly.

 Thereafter, the Snells hired a new attorney. He then, on behalf of both Orvalle Snell and Mrs. Snell, filed a document entitled "Appeal" and raised the same old questions along with a whole battery of new questions not raised in the last previous appeal, including the fact that Mrs. Snell had never been served any notices other than the one at the inception of the application for a private road. She had not joined with her husband in the previous appeal. This cannot be considered as a petition for review, which is the means by which an appeal is initiated in an administrative agency matter because of a rule which is well stated in 4 C.J.S. Appeal and Error § 137a, p. 444:

"Generally, no appeal or error lies from or to a judgment entered pursuant to the mandate of an appellate court, but an appeal will lie from such judgment if it fails to conform to the mandate or involves matters not determined by the original appeal or follows new proceedings made necessary by the mandate."

The district court was performing in the role of an appellate court and its order was the equivalent of a mandate. One of the reasons for this standard is that the actual entry of a new order by the agency acting at the instance of the appellate court is a disposition of the merits and it is performing only a ministerial act and not one in the nature of a judicial act. *Gaer v. Bank of Baker*, 1942, 113 Mont. 116, 122 P.2d 828, 830; *Stewart v. Salamon*, 1878, 97 U. S. 361, 24 L.Ed. 1044.[6] Additionally, the

development of land as a resource for the common good, whether residential or otherwise.

6. This is a well settled appellate control: *Gusick v. Eyman*, 1956, 81 Ariz. 182, 302 P.2d 944; *Cabot v. Corcoran*, 1955, 333 Mass. 769, 130 N.E.2d 699; *Edmonds v. White*, 1950, 203 Okl. 645, 225 P.2d 358; *Tucker v. Brown*, 1944, 20 Wash.2d 740, 150 P.2d 604; *Demary v. Hedrick*, Tex.Civ. App.1941, 153 S.W.2d 496; *Idaho Gold Dredging Corporation v. Boise Payette Lumber Co.*, 1934, 54 Idaho 270, 30 P.2d

order entered by the board of county commissioners is in effect the order of the district court and an appeal would amount to an appeal from the district court to the district court. *Stewart v. Salamon,* supra.

A further reason reposes in the doctrine of law of the case. As set out in 5 Am.Jur.2d (Appeal and Error) § 744, p. 188:

"* * * if an appellate court has passed on a legal question and remanded the cause to the court below for further proceedings, the legal questions thus determined by the appellate court will not be differently determined on a subsequent appeal in the same case. * * *"

Appeals cannot be allowed piecemeal. The rule is fastened to the wisdom of ending litigation and efficient judicial administration in discouraging duplication of effort and is applicable at all levels of the court system including appeals from administrative agencies.[7]

The rule is likewise extended to include questions raised by the record which could and should have been raised in the first appeal.[8] Nor is the employment of a new attorney a license to reopen the entire case.

Since the last order entered by the board of county commissioners was not appealable, Mrs. Snell is precluded from appealing because she failed to make a timely appeal by petitioning for review. She should have done so within 30 days after the preceding board order or show excusable neglect on the ground that she did not hear of the commissioners' order to obtain an additional 30 days. Rule 72.-1(d).[9] Failure to timely appeal is jurisdictional. *Curtis v. Center Realty Co.,* Wyo. 1972, 502 P.2d 365, 367. This court can have no greater jurisdiction of the subject matter than the trial court and where the trial court had no jurisdiction in an administrative appeal from an agency, this court must dismiss the appeal. *Ginn v. Parrish,* Wyo.1961, 362 P.2d 824. Mrs. Snell slumbered on her rights, if she had any.

The requirements we have set out are consistent with the provisions of § 9–276.-32(a), W.S.1957, 1975 Cum.Supp.:

"(a) Subject to the requirement that administrative remedies be exhausted and *in the absence of any* statutory or *common-law provision precluding or limiting judicial review,* any person aggrieved or adversely affected in fact by a final decision of an agency in a contested case, or by other agency action or inaction, or any person affected in fact by a rule adopted by an agency, is entitled to judicial review in the district court for the county in which such administrative action or inaction was taken, or in which

1076; and *National Elevator Co. v. Great Northern Railway Co.,* 1918, 140 Minn. 382, 168 N.W. 134.

7. The principle is widely accepted. 5B C.J.S. Appeal and Error § 1821, p. 181. See, for example, *Prudential Federal Savings & Loan Association v. St. Paul Insurance Cos.,* 1968, 22 Utah 2d 70, 448 P.2d 724; *Shrives v. Talbot,* 1966, 91 Idaho 338, 421 P.2d 133; *In re Monaghan's Estate,* 1951, 71 Ariz. 334, 227 P.2d 227; *Gore v. Bingaman,* 1942, 20 Cal.2d 118, 124 P.2d 17, trans. 52 Cal.App. 2d 485, 126 P.2d 462.

8. *Hurst v. Hurst,* 1965, 1 Ariz.App. 227, 401 P.2d 232, supplemented in 1 Ariz.App. 603, 405 P.2d 913; *Smith v. La Forge,* 1952, 173 Kan. 70, 244 P.2d 211; *Jones v. Medlock,* 1948, 201 Okl. 109, 202 P.2d 212; *Gray v. Wikstrom Motors,* 1943, 18 Wash.

2d 795, 140 P.2d 497; and *Allen v. California Mutual Building & Loan Association,* 1943, 22 Cal.2d 474, 139 P.2d 321.

9. Rule 72.1(d), W.R.C.P., provides in pertinent part:
"In a contested case, or in a noncontested case where a statute places a time limit on appeal, the petition for review shall be filed within thirty days after the final decision of the agency or denial of a petition for a rehearing, or, if a rehearing is held, within thirty days after the decision thereon, except that upon a showing of excusable neglect based upon the failure of a party to learn of the decision or action, the district court may extend the time for filing the petition for review not exceeding thirty days from the expiration of the original time herein prescribed. * * *"

any real property affected by such administrative action or inaction is located, or in the event no real property is involved, in the district court for the county in which the party aggrieved or adversely affected by the administrative action or inaction resides or has its principal place of business. * * *" (Emphasis added.)

The common-law rules pertaining to restrictions on appeal following remand are present and not absent and preclude judicial review within the factual and procedural structure of this case.

The most that the Snells' last filed document could be considered would be a motion for rehearing or reconsideration. We find nothing in either the Administrative Procedure Act or Rule 72.1, W.R.C.P., which authorizes even those motions. This case, however, discloses a gap in Rule 72.1. There should be in the interest of justice a provision for use in circumstances such as this case, to recall, following action on the mandate, to the district court the record in order to clearly permit the appeal to this court assured by § 9–276.33, W.S.1957, 1975 Cum.Supp.[10] We cannot and will not permit the rules which we have laid out in this case to become instruments to prevent appeal to this court, when otherwise allowed.

We find no prejudicial error.

Affirmed.

10. The right of appeal to this court is as follows:

"An aggrieved party may obtain a review of any final judgment of the district court under this act by appeal to the supreme court. The appeal shall be taken as in other civil cases."