**PUBLIC SERVICE COMMISSION of the State of Wyoming, Appellant (Defendant),**

v.

**LOWER VALLEY POWER AND LIGHT, INC., a Wyoming Co-operative Corporation, Appellee (Plaintiff).**

**No. 5132.**

Supreme Court of Wyoming.

March 19, 1980.

John D. Troughton, Atty. Gen., Thomas J. Carroll, II, Asst. Atty. Gen., for appellant.

Ted C. Frome, Afton, for appellee.

Before RAPER, C. J., McCLINTOCK, ROSE and THOMAS, JJ., and GUTHRIE, Retired Justice.

## ORDER DISMISSING APPEAL

McCLINTOCK, Justice.

Lower Valley Power and Light, Inc. (LVPL) filed application with the Wyoming Public Service Commission (the commission) requesting an increase in its utility rates. After public hearing the commission entered its order authorizing some increase but not as much as LVPL considered necessary. It filed petition for review in the district court of Lincoln County, including in that petition a request that it be permitted to present evidence as to the conse-

quences of the commission's action. Over objection of the commission, evidence was given before the district judge but no ruling was made as to the legal effect thereof and no action was taken upon the merits of the review. Its order, now appealed to this court by the commission, was that the commission

". . . receive evidence from Lower Valley Power and Light, Inc., to show the effect of the Wyoming Public Service Commission's Order dated December 21, 1978, upon the operations of Lower Valley Power & Light, Inc."

The commission appealed to this court but prior to the filing of any briefs LVPL filed a motion to dismiss the appeal for lack of a final appealable order under Rule 1.05, WRAP, which in pertinent part defines a final order as one

". . . affecting a substantial right in an action, when such order in effect determines the action and prevents a judgment."

We denied this motion without prejudice to renew the same upon oral argument. LVPL has continued to press its motion and upon consideration of the briefs, oral argument and the record in the case, a majority of the court, Justices McClintock and Rose, and Justice Guthrie, Retired, are of the opinion that the appeal should be dismissed. Chief Justice Raper and Justice Thomas are of the opinion that it should not, and have filed their separate dissents hereto attached.

Generally a judgment or order which determines the merits of the controversy and leaves nothing for future consideration is final and appealable, and it is not appealable unless it does those things. 4 C.J.S. Appeal and Error § 94, p. 252. We conclude that the order of the district court was not designed finally to dispose of the matter but only to obtain additional information which should be considered by the commission in the first instance. No substantial rights of the commission were adversely affected by that order.

It is therefore ordered that the captioned appeal be and it hereby is dismissed.

ROSE, J., and GUTHRIE,* Retired Justice, concur.

RAPER, C. J., and THOMAS, J., dissent.

RAPER, Chief Justice, dissenting.

I dissent and join in the dissent of Justice Thomas.

I cannot accept the shallow analysis and summary disposition given to the district court's order. The determination that it is not a final order rests upon an extraordinarily slender thread. The majority is satisfied to rely upon the most general expression of the rule of finality as set out in 4 C.J.S. Appeal & Error § 94, p. 252. The nuances of that rule—the exceptions and distinctions—require scores of pages to describe within that one section of C.J.S. The majority applies a rule without regard to reason or the practicalities of rate making. When the reason for the rule ceases, so does the rule. *Rodin v. State ex rel. City of Cheyenne, Wyo.*, 1966, 417 P.2d 180, 196; *Chicago & N.W. Railway Co. v. City of Riverton*, 1952, 70 Wyo. 84, 122, 247 P.2d 660, 660–661; *State ex rel. Pape v. Hockett*, 1945, 61 Wyo. 145, 170, 156 P.2d 299, 308.

The Public Service Commission (PSC) is given the power to regulate rates charged by utilities. The whole nature of rate making is to analyze historical facts (known and measurable facts) and, on the basis of that analysis, project what rate the utility may charge in the future. If LVPL failed to place evidence in the record before the PSC which would serve to demonstrate that a given rate increase, less than that requested, would not afford that utility sufficient revenue to meet its financial obligations, then it has failed to meet its burden of proof. In any other context, where a party fails to carry the burden of proof in the lower court, that party has lost its claim and would not be permitted to go back

again and again for an opportunity to prove its case. That is what the court is doing here. LVPL does not allege that the PSC wrongfully refused to hear this evidence. Indeed, LVPL concedes the evidence had not yet come into being when the hearing was held before the PSC. The major difference in the rate-making setting (from the ordinary civil case) is that LVPL, through proper procedures, *can* have a second, third, et cetera, chance to prove its case. However, it *must* do so in a *new* rate-making hearing, and not by reopening an already decided case by a back-door method that has been grossly misapplied by the district court and now with the blessing of this court.

I shall set out the background of this case in some detail and express my views fully because I consider the matter one of great importance to the efficient functioning of the PSC vis-a-vis the power of courts to review its activities. The PSC plays a vital role in protecting consumers in the utility area, and this decision serves to inhibit its statutorily established functions.

LVPL made application to the PSC for an increase in the rates it charges to its customers.[1] After an *extensive investigation and public hearings*, the PSC granted a rate increase to LVPL that amounted to 86% of the amount requested. A final decision of the commission was issued to that effect on December 21, 1978. On January 15, 1979, LVPL filed an appeal in the district court in accordance with § 37–2–219, W.S.1977, the Wyoming Administrative Procedure Act (W.A.P.A.), §§ 9–4–101, et seq., W.S.1977, and Rule 12, Wyoming Rules of Appellate Procedure (WRAP). In addition to a general review of the PSC's order, LVPL asked to present additional evidence[2] " * * * as to the consequences

---

* ROONEY, J., having recused himself from participation in this case, GUTHRIE, J., retired, was assigned, having been retained in active judicial service pursuant to Art. 5, § 5, Wyoming Constitution, and § 5–1–106(f), W.S.1977, by order of this court entered on January 1, 1979.

1. Sections 37–2–101, et seq., W.S.1977.

2. Rule 12.08, WRAP:

"If, before the date set for hearing, application is made to the court for leave to present additional evidence, and it is shown to the satisfaction of the court that the additional evidence is material, and there was good rea-

of the Commission's action. \* \* \*'' The district court conducted a hearing on March 1, 1979, on the issue of whether LVPL should be allowed to adduce additional evidence. The nature of the evidence in controversy was summarized by counsel for LVPL:

"MR. FROME: \* \* \*

"When I asked them to permit us to present additional evidence without the necessity of this hearing, they advised that we should have made an application for rehearing before the Commission and, of course, there is a staturoty [statutory] time period that you have to do that within. What they failed to realize and I can't convince them of is that we had no additional evidence to present to that Commission during that hearing and we did not know the effect of their rate ordered until we had had the rate order— after the rate order was prepared and filed rates with the Commission and had they accepted, which took about twenty days. Then, after they were accepted, *they then projected those rates by computer to see what the net effect of that would be as far as the income that would be derived from the increase in the rates.* In addition, *we had to determine the results of the last calendar year operation, financially, of the company before we were able to determine what the debt service coverage and the times interest earned ratio, what the TIER was for that particular time.* That's what we are going to be talking about here. But, basically, *we didn't have the information* to present *until we got the Order and analyzed the results of it* and then applied it back to our operation. So there is no way we could have presented the evidence to that Commission by the time that they wanted—that they said we should have done so. That was a physical impossibili-

ty. If they are to prevail in that type of argument, then nothing can ever go back to that Commission once they have made up their minds and determined you are not allowed to, that there is no additional evidence that an application for a rehearing would present. The two things are different. We want to present to them the results of their order and why it is wrong. We didn't have anything further." (Emphasis added.)

The PSC resisted this attempt to introduce additional evidence, arguing that Rule 12.08, supra, should not be used by a utility company, or other party involved in utility rate cases, as a loophole to avoid proper rate-making procedures. The PSC asserted that the effect of allowing LVPL to introduce such evidence would be to require the PSC to consider evidence as to only one aspect of the utility's financial status which relates to a time period subsequent to the time period which was considered by PSC in determining the need for a rate increase and for which the PSC took into account all aspects of the utility's financial condition. Further, the PSC contended that LVPL had not exhausted its administrative remedies because it had not requested a rehearing pursuant to § 37–2–214, W.S.1977, and that LVPL could also initiate a new rate-making proceeding if subsequent events proved that a new rate increase was warranted.

After hearing the arguments of counsel and an offer of proof by LVPL, the district court entered its order on April 2, 1979, requiring the PSC " \* \* \* to receive evidence from Lower Valley Power and Light, Inc., to show the effect of the Wyoming Public Service Commission's order dated December 21, 1978, upon the operations of Lower Valley Power & Light, Inc."

In this appeal, the parties have continued to take the positions they did in the district

son for failure to present it in the proceeding before the agency, the court in contested cases shall order that the additional evidence be taken before the agency upon conditions determined by the court. The agency may adhere to or modify its findings and decision after receiving such additional evidence, and shall supplement the record to reflect the

proceedings had and the decision made. Supplemental evidence may be taken by the court in cases involving fraud or involving misconduct of some person engaged in the administration of the law affecting the decision. In all cases other than contested cases additional material evidence may be presented to the court."

court in regard to the materiality of the evidence. In addition, LVPL asserts that the order of the district court is not a final judgment and therefore the appeal should be dismissed.

In my view the order of the district court is in effect a final judgment and appealable, and the district court exceeded its power in directing the taking of further evidence. It should have reviewed what was actually done at the administrative level and made a decision.

The PSC has general and exclusive power to regulate and supervise every public utility within the state in accordance with the provisions of the public service commission statute. Section 37-2-112, W.S.1977. The purpose in granting the PSC such plenary power to regulate public utilities is to protect the public interest from the monopolistic characteristics of public utilities. 1 Priest, Principles of Public Utility Regulation, ch. 1, p. 1 (1969). Among the powers accorded the PSC is to determine what just and reasonable rates may be charged by a utility for its service. Section 37-2-121, W.S.1977. The matters which the commission may consider in determining just and reasonable rates are set out at § 37-2-122, W.S.1977.

The first step in setting utility rates is to select a recent test period within which all elements of a utility's operations and finances may be analyzed and matched against one another. Ordinarily, a test period covering twelve months is used and is referred to as the "test year." In this case, a test year running from April 1, 1977 to March 31, 1978, was used.[3] Once the test year has been selected, the commission must then determine the financial condition of the utility during that test period in order to decide if the new rates requested by a utility are fair and reasonable.[4] The financial condition of the utility breaks down into four major areas. They are: (1) gross utility revenues, (2) operating expenses, (3) rate base, and (4) rate of return. 1 Priest, Principles of Public Utility Regulation, supra. Based on all the evidence presented, and LVPL does not contend that the PSC did not receive all evidence that LVPL wished to adduce at the rate-making hearings, the PSC granted a rate increase that amounted to 86% of what LVPL requested. LVPL now wants the PSC to take evidence relating to *one element* of LVPL's financial condition, its rate of return, for a time period different than the one utilized in the original rate case and thus different from the time period of which *all elements* of LVPL's financial condition were analyzed.

By their very nature, and most especially in these times of unbridled and unpredictable inflation, the financial conditions of utilities and the rates they must charge are constantly changing. LVPL concedes that it had no additional data to present to the PSC at the time this rate hearing was conducted and that it had no data it wanted to address to the PSC in a rehearing. Yet, LVPL wants to have the rate-making process interrupted and its case remanded to the PSC so that it can demonstrate that things are not working out the way envisioned in the PSC order. If this were determined to be an acceptable procedure, it is possible, and indeed quite likely, that no rate-making case would be finally determined until the PSC had granted, after repeated reevaluation based on facts that do not come into being until after the PSC's investigation and conduct of public hearings are over, the full rate increase requested by the utility. I cannot conceive that this is the intended purpose of the W.A.P.A. or Rule 12.08, supra. The evidence which LVPL wanted to present to the PSC did not even exist at the time the PSC made its order; and so it could not, under the circumstances of this case, be material to that

---

3. LVPL clearly accepted this as the "test year" which would be the basis for any change in their utility rates. Indeed, the PSC began their investigation and staffing work using a different period but adopted the one used to accommodate LVPL.

4. The bulk of the analytical work is done by the PSC staff which appears as an intervenor at the hearings and presents its independent analysis of request for rate increases.

proceeding or any review of that proceeding. It was error for the district court to remand the case back to the PSC for consideration of that evidence. The effect of my position is not to foreclose a utility from seeking review of a PSC rate order, rather it is to compel them to proceed in the manner set out by the legislature. I would hold that the evidence with which LVPL wanted to supplement the record was not material and hence not admissible under Rule 12.08, supra.

I am also compelled to the conclusion that the order of the district court was a final judgment under the circumstances of this case. Section 37–2–219, supra, provides:

"Any party * * * authorized * * to file an original complaint before the commission, may appeal from a final decision or other commission action or inaction, in the same manner, and to the same extent, as provided by the Wyoming Administrative Procedure Act. * * *"

The W.A.P.A. implements the general right of review in the district court in § 9–4–114, W.S.1977.[5] Pursuant to authority vested in the court by § 9–4–114(b), W.S.1977, Rules 1.03 and 12, WRAP, were adopted. Rule 1.03 provides:

"A judgment rendered or final order made by an administrative agency or any court inferior in jurisdiction to the district court may be reversed, vacated, remanded or modified upon an appeal taken to the district court for errors appearing on the record."

Rule 12.01 provides:

"To the extent that judicial review of administrative action by a district court is available, any person who is aggrieved or adversely affected in fact by a final decision of an agency in a contested case, * * * may obtain such review as provided in this rule."

Rule 12.08, supra, empowers a district court to order additional evidence to be taken before the agency in contested cases within the limitations set by that rule. Beyond the limited powers conferred on the district court by Rule 12.08, the district court must conduct its review in accordance with Rule 12.09:

"The review shall be conducted by the court without a jury and shall be confined to the record as supplemented pursuant to Rule 12.08, W.R.A.P., and to the issues raised before the agency. The court's review shall be limited to a determination of the matters specified in § 9–4–114(c). The court may receive written briefs and may in its discretion hear oral argument.

"The court *shall enter judgment* affirming, modifying or reversing the order, *or in its discretion, remanding the case to the agency* for proceedings in conformity with the direction of the court. [Emphasis added.]

"If briefs and oral argument are to be allowed, petitioner's brief shall be filed and served within thirty (30) days of transmittal of the record by the agency to the court; respondent's brief shall be filed and served within thirty (30) days of service of petitioner's brief."

Rule 12.11, WRAP, provides for review of any final judgment of the district court in this court:

"An aggrieved party may obtain a review of any final judgment of the district court by appeal to the Supreme Court. The appeal shall be taken as in other civil cases."

Although captioned as an order which purports only to require the PSC to hear additional evidence, the district court's order is a final judgment in effect, because it requires the PSC to conduct a new ratemaking proceeding based upon the financial condition of LVPL for a period of time different from that which the PSC and LVPL agreed to use for the purpose of determining this application for a rate increase. A review of the above-cited statutes and rules makes it abundantly clear that this is not within the power of the

---

5. Since this petition for review was initiated in January 1979, it would be governed by the version of this statute appearing in the 1977 republished statutes rather than the 1979 amended version which became effective on May 25, 1979.

district court. To allow such an order to stand would totally frustrate the powers conferred on the PSC by the legislature to regulate the rates charged by utilities.

It is a rule firmly embedded in our jurisprudence that appeals will not be allowed piecemeal. *Knudson v. Hilzer,* Wyo.1976, 551 P.2d 680; *Snell v. Ruppert,* Wyo.1975, 541 P.2d 1042; *Reeves v. Harris,* Wyo.1963, 380 P.2d 769. However, in this case the reason for the rule simply does not exist and it should not be applied to permit an improper proceeding to take place.

However, Rule 1.04, WRAP, provides:
"A judgment rendered or final order made by a district court may be reversed in whole or in part, vacated or modified by the Supreme Court for errors appearing on the record."
An order of the district court may be construed as a final judgment though denominated as an order. *Cline v. City of Boulder,* 1975, 35 Colo.App. 349, 532 P.2d 770, 772.
"Ordinarily, it is considered that the sufficiency of a judgment, decree, or order as final to support an appeal depends on its substance, or its effect, and not on its form, despite the strict rule at common law making form essential. It has also been held that the question whether a judgment, order, or decree is final and appealable is not determined by the name or description which the court below gives it, but is to be decided by the appellate court on a consideration of the essence of what is done thereby, or by its content or substance, or its substance and effect, or its effect on the rights of the parties." (Footnotes omitted.) 4 C.J.S. Appeal & Error § 94b, pp. 265–266; see 9 Moore's Federal Practice, ¶ 110.12, pp. 150–152.
I would construe the district court's order to be a judgment the substance and effect of which was to terminate the litigation between the parties and to initiate a new rate-making proceeding to be based on a new set of facts and circumstances. Thus it is a final judgment which the PSC could properly appeal to this court. The district court should have reviewed the proceedings

had before the PSC, without remand to take further evidence of the nature contemplated by the district court's order.

Moreover, even if we only apply Rule 1.05 to this proceeding, rather than the analysis discussed above, the order of the district court is reviewable. There is no question but that the district court's order affects a substantial right of the PSC, i. e., the right to fix rates based upon their statutory authority and administrative roles adopted pursuant to those statutes. The use of a test year is the accepted means of determining rate increases in the utility field and was mutually adopted by the parties in the case at bar. The PSC should not be required to make continuing adjustments in a granted rate increase based on utility selected data from a time-period unrelated to that used in the original proceeding.

Rule 1.05 provides that "[a] final order is: (1) an order affecting a substantial right in an action, when such order in effect determines the action and prevents a judgment; * * *." The district court's order affects a substantial right of the PSC and prevents a judgment in favor of the Public Service Commission's setting of a rate for LVPL under its statutory authority. *Big Horn County Commissioners v. Hinckley,* Wyo. 1979, 593 P.2d 573.

I would have reversed the district court and remanded with directions to review what it had before it.

THOMAS, Justice, dissenting.

I dissent and join in the dissent of Chief Justice RAPER.

In addition to the views expressed by Chief Justice Raper in his dissenting opinion in which I have joined, I have some views of my own with respect to this case and similar cases of which this case is an example. The limited question the majority order resolves is whether there is an appealable order. I would rule that this order is a final order within the definition found in Rule 1.05, W.R.A.P. It is "an order affecting a substantial right in an action, when such order in effect determines the action and prevents a judgment."

There can be no question that this order is dispositive of the review proceeding which had been instituted in the district court, and the order in effect determines that action. It does prevent a judgment in favor of the Public Service Commission, to which it might otherwise be entitled. I would rule that in addition it does affect a substantial right of the Public Service Commission, and I would add that I can find no basis to distinguish this case from *Big Horn County Commissioners v. Hinckley*, Wyo., 593 P.2d 573 (1979). Were we to look at the merits, I have an abiding belief that a majority of the court would conclude that the additional evidence alluded to in the district court remand order, as quoted in the majority order of this court, is not material to the proceeding before the Public Service Commission. In my judgment the district court has directed the Public Service Commission to receive evidence which the Public Service Commission can then ignore in performing its statutory responsibilities, and the district court will have to affirm the Public Service Commission in that regard. Consequently the effect of the district court order is that it inhibits the right of the Public Service Commission to pursue its work in accordance with the statute, its rules and regulations, and even its agreement with Lower Valley Power and Light, that a limited one-year period would be used for the data necessary to establish the need for an appropriate rate increase. The Public Service Commission, as any other litigant, is entitled to some prospect of finality, and yet that substantial right is denied by the district court's ruling. In a very real sense the Public Service Commission has been denied due process of law.

This case stands for me as additional evidence of a need to develop a procedure for granting discretionary interlocutory review by this court.[1] The court then could in its discretion review orders which otherwise must be regarded as interlocutory in nature, but which need to be reviewed in order to correct an egregious mistake of

law and maintain a rational proceeding for the parties. I concede that there will be perhaps a temptation to pursue such a procedure in a number of instances in which, in the exercise of the court's discretion, review will be denied. I do not, however, conceive that to be an insurmountable obstacle to the wise use of appropriate interlocutory review by this court. In an instance such as this the court then could proceed to review in its discretion, and would not be inhibited by any lack of a judgment or final order.

---

1. There have been before this Court in recent years several matters in which the necessity for correcting a mistake of law was obvious, but review was denied because of the absence of a judgment or a final order.