JOHN BADURA ET AL., APPELLANTS, V. LAWRENCE L. LYONS, APPELLEE.

23 N. W. 2d 678

FILED JUNE 28, 1946. No. 32062.

*Wear, Boland & Nye,* for appellants.

*Cranny & Moore,* for appellee.

Heard before SIMMONS, C. J., PAINE, CARTER, MESS-MORE, YEAGER, CHAPPELL, and WENKE, JJ.

MESSMORE, J.

This is an action in equity brought by the plaintiffs to enjoin interference by the defendant with their use of a road leading from a tract of land owned by them across lands of the defendant to a public highway. The petition raised the issue of an easement by prescription, which was controverted by the answer. Plaintiffs have abandoned the issue of a right of an easement by prescription in this appeal, and the remaining issues are whether or not plaintiffs are entitled to an easement by necessity or implication, and the interpretation and effect of an express easement appearing in the referee's deed.

We deem it unnecessary to set out the pleadings.

The district court rendered judgment against the plaintiffs and for the defendant, finding that the plaintiffs were not entitled to an easement by prescription, implication, or necessity; that the use of the road by the plaintiffs over the defendant's lands was permissive; and that the plaintiffs have an express easement for ingress and egress on a road one rod wide on the north side of section 4. The court dissolved and vacated the temporary injunction and dismissed the plaintiff's petition. From this judgment the plaintiffs appeal.

For convenience, the appellants will hereinafter be referred to as plaintiffs, and the appellee as defendant.

In order to understand the lands and roadway involved herein, it is necessary to visualize three tracts of land which lie in the north half (N½) of the northeast quarter (NE¼) and the northeast quarter (NE¼) of the northwest quarter (NW¼) of section 4, township 12 north, range 10 east of the 6th P. M., Sarpy County, Nebraska. These tracts of land are otherwise known as tax lots Nos. 1, 2, and 3. Tax lot No. 1 is approximately square and contains 48.22 acres in the northeast corner of this section. Tax lot No. 2 is also approximately square, and contains 48.18 acres and lies immediately to the west of lot No. 1. Tax lot No. 3 lies on the west side of lot No. 2, and the west side of lot No. 3 fronts on the left or east bank of the Platte River. A public highway runs approximately north and south through tax lot No. 1. The land owned by the plaintiffs is located in the northwest corner of tax lot No. 3, fronting on the Platte River. A drainage ditch approximately 60 feet in width runs north and south across lot No. 1, approximately parallel with the public highway and about 350 feet west of said highway. At a point about 126 feet south of the section line and 350 feet west of the highway, there is a bridge crossing the drainage ditch.

When plaintiffs located the tract of land in lot No. 3, in the autumn of 1923, there was a roadway extending from lot No. 3 to the drainage ditch, thence south about 126 feet, thence east across the bridge over the drainage ditch and extending to the public highway. No crops were planted on this roadway, and weeds grew on both sides thereof. The plaintiffs and others used this roadway from about 1924, until October 7, 1944, when the defendant closed and padlocked the gate where the roadway enters the public highway.

The record, in addition, discloses the following facts: In the autumn of 1923, Stanley Badura and Vencil Barsaballe, two of the plaintiffs, while out hunting, and looking for a place to fish and hunt subsequently along the Platte River and a place for recreation for themselves and families and

other friends on occasions, met Frank and Matt McIntee who were in possession of certain land bordering the river, and inquired of them if they might be privileged to use the land for such purposes and did obtain their permission to do so. A few years thereafter plaintiffs negotiated with Frank, James, and Matt McIntee relative to the acquisition of a lease to some land which they could occupy and upon which they could build a shack. These negotiations resulted in a rental charge of $60 a year for a part of the land in lot No. 3. Rental for the use of the land and roadway was paid each year until 1934. There was a lock placed on the gate leading from the public road, and the plaintiffs, as did the McIntees, had keys, and on occasions it was necessary to obtain keys to go to the plaintiff's land. These facts disclose a permissive use of the roadway. The plaintiffs were tenants of Matt and James McIntee until the plaintiffs purchased the interests of Matt and James McIntee in the land in lot No. 3 on November 9, 1934, at which time Matt and James McIntee, both single, executed a quitclaim deed to the plaintiffs, which described the land as one acre more or less, together with all accretions to the center of the Platte River. The deed also conveyed an easement of a strip one rod wide on the north side of section 4, to the road east for ingress and egress. This deed was recorded March 28, 1944.

Prior to November 9, 1934, the land in lot No. 3 in which the plaintiffs purchased the interests of Matt and James McIntee, was owned by four persons who were brothers and sisters, namely, James and Matt McIntee, Maggie Lyons, mother of the defendant, and Kate Brady. In 1939, Maggie Lyons died, and her interest in the land was inherited by the defendant and his sister, Mary Lyons Massie. Kate Brady quitclaimed her interest to Dr. L. C. Hilsabeck in 1939. In 1943, the defendant acquired title to all of lots Nos. 1 and 2, by a sheriff's deed following a foreclosure by the Miller Investment Company of a certain tax certificate it had for accumulated taxes. The defendant then owned all

of lots Nos. 1 and 2, and lot No. 3 at that time was owned by the plaintiffs, the defendant, Mary Lyons Massie, and Dr. L. C. Hilsabeck.

On October 20, 1943, the defendant filed a suit in partition, to partition lot No. 3. In the partition action the defendants, who are the plaintiffs in this action, filed an amended answer wherein they alleged that they became joint owners of and entitled to an easement on a strip of land one rod wide on the north side of section 4, to the road east, for egress and ingress, and in the prayer, asked that such easement be allowed. The decree in partition preserved the express easement as requested in the amended answer and prayer thereof. The referee's deed also contained the express easement.

The defendant purchased at the partition sale all of the land in lot No. 3 except the land owned by the plaintiffs, and the referee's deed to the defendant contained the same statement with reference to the easement as appears in the decree in partition and in the referee's deed to the plaintiffs.

With reference to the roadway covered by the express easement, the record discloses that upon inspection of the northeast corner of section 4, between the road and the drainage ditch running north and south, within a rod of the fence there are about 17 trees varying in size, which would have to be removed, and the defendant's evidence discloses it would require about eight hours to remove the trees and four hours to blast out the stumps. The plaintiff's evidence is to the effect that it would be difficult to remove the trees, and that large expense would be attached to using the express easement due to the fact that a 78-foot bridge would have to be built across the drainage ditch which would cost approximately one thousand dollars. Defendant's evidence is to the effect that such a bridge could be constructed, and though there is a down grade from the dike east to the public road, the only grade that would be required at such place would be one sufficient to make an easy approach lead-

ing to and from the public road.

Plaintiffs contend the court did not correctly interpret the language used in the referee's deed granting plaintiffs an express easement over the lands of the defendant; that the express easement described in the referee's deed by the language contained therein, was intended to describe the roadway which the plaintiffs had used since approximately 1924, until the defendant, on October 7, 1944, locked the gate where said roadway enters the public highway. The defendant's contention is that the language used in the express easement means an easement one rod wide extending from plaintiff's property in the northwest corner of lot No. 3, directly east along and adjacent to the north side of said section, to the public road running north and south through lot No. 1. Plaintiffs argue that the language used, "on the north side of said section," is susceptible of many meanings, and must be construed by what was intended by the parties at the time such language was used by them.

The language in the referee's deed is as follows: "Together with an easement for ingress and egress over a strip one rod wide on the north side of said section to the road."

"Where a contract is plain and unambiguous, its meaning should be determined without reference to extrinsic facts." Wood v. Security Mutual Life Ins. Co., 112 Neb. 66, 198 N. W. 573.

Extrinsic evidence rules applicable to contracts are likewise applicable to deeds, insofar as the deeds are contractual. See Frey v. Drahos, 6 Neb. 1, 29 Am. Rep. 353.

The noun "side" is defined in Webster's New International Dictionary, (2d ed.) Unabridged, p. 2330, as "A bounding line of a geometrical figure; as, the side of a field, square, river, road, etc."

The word "side," as used in the express easement, is not used in a technical sense, but as it is commonly and properly understood.

It seems apparent that any interpretation of the words,

"one rod wide on the north side of section 4," which would permit a road that was not alongside and adjacent to the north side of said section cannot stand. We conclude that the trial court correctly interpreted the language used in the referee's deed to plaintiffs in the partition action.

There is a further reason why the plaintiffs cannot prevail in this contention. Plaintiffs have not made any claim in their pleadings in the district court that the referee's deed, by the express easement contained therein, granted them the use of the roadway as contended for by them. There is no evidence in the record as to what the plaintiffs thought or considered was the road which they were granted by the easement in the referee's deed. This issue is raised by the plaintiffs for the first time in this court. The following authorities govern:

"An issue not raised by the pleadings and proof in the district court cannot be raised for the first time in the supreme court." Horbach v. Butler, 135 Neb. 394, 281 N. W. 804.

"Except as to questions of jurisdiction, questions not presented to nor passed on by the trial court will not be considered on appeal." Callahan v. Prewitt, 143 Neb. 787, 13 N. W. 2d 660; see, also, State, ex rel. Sorensen v. Commercial State Bank, 126 Neb. 482, 253 N. W. 692; Williams v. Lantz, 123 Neb. 790, 244 N. W. 400.

Plaintiffs contend that under the facts disclosed by the record, they are entitled to an apparent or visible easement over the lands of the defendant for ingress and egress to and from the land of the plaintiffs.

When the land was offered for sale in the partition action the plaintiffs owned the interest of Matt and James McIntee in that part of lot No. 3 as shown by quitclaim deed. The defendant owned all other interests in the same tract of land in lot No. 3 as shown in the deed from James and Matt McIntee to the plaintiffs, and owned the balance of lot No. 3, and lots Nos. 1 and 2. Therefore, there was a common ownership in the tract of land as described in the quitclaim

deed from James and Matt McIntee to the plaintiffs.

The plaintiffs argue that the fact that the roadway was used by them for nearly 25 years was well known to the defendant. He had been over the roadway, through the gate, and over the bridge, and had observed the roadway, and further, knew that the roadway constituted the only means of ingress to and egress from the plaintiff's tract of land in lot No. 3. Therefore, the defendant's lands were burdened with an easement in favor of the plaintiffs to permit ingress to and egress from the plaintiff's land over the lands of the defendant. The plaintiffs further state that under such circumstances there is an apparent and visible easement, and in support of their contention cite Arterburn v. Beard, 86 Neb. 733, 126 N. W. 379, and DeConly v. Winter Creek Canal Co., 110 Neb. 102, 193 N. W. 157, as follows: "One who purchases land burdened with an open and visible easement is charged with notice of the same, and the estate he purchases is servient to the easement."

From an analysis of the cited cases compared to the case at bar, in the cited cases there was an existing easement at the time the proceedings were instituted, while in the instant case there was no existing easement in favor of the plaintiffs at the time they brought this action. The defendant would not be bound by the plaintiff's use of the road in a claimed easement unless in truth and in fact an easement actually existed. No easement by prescription existed, and we conclude that the plaintiffs did not have a visible or apparent easement as contended for by them.

Plaintiffs contend they are entitled to an easement by implication or necessity. This contention is based on the following facts, in substance: First, that the interests of James and Matt McIntee in the tract of land in lot No. 3 were purchased for $240. Thereafter the plaintiffs spent several hundred dollars in improving their property, found that their title was imperfect, and in the partition action were required to bid against competition the amount of about $1,600 to acquire the full title of a part of the land

in lot No. 3. Further, to utilize the easement appearing in the referee's deeds would require a 78-foot bridge across the drainage ditch, which would cost approximately one thousand dollars. It would further be necessary to construct a grade on the east side of the drainage ditch to the highway, and to remove several trees along the section line.

"A way of necessity is an easement arising from an implied grant or implied reservation; it is the result of the application of the principle that whenever a party conveys property, he conveys whatever is necessary for the beneficial use of that property and retains whatever is necessary for the beneficial use of land he still possesses. A way of necessity usually arises where there is a conveyance of a part of a tract of land of such nature and extent that either the part conveyed or the part retained is entirely surrounded by the land from which it is severed or by this land and the land of strangers. It is a universally established principle that where a tract of land is conveyed which is separated from the highway by other lands of the grantor or surrounded by his lands or by his and those of third persons, there arises, by implication, in favor of the grantee, a way of necessity across the premises of the grantor to the highway. In other words, if one grants a piece of land in the midst of his own, he thereby impliedly grants a way to reach it." 17 Am. Jur., Easements, § 48, p. 959.

The courts are not in complete harmony as to the degree of necessity that is required to authorize an implied grant or reservation of a way of necessity. That is, that ways of necessity are ways of strict necessity as distinguished from ways of mere convenience, see Corea v. Higuera, 153 Cal. 451, 95 P. 882, and annotations to 17 L. R. A. N. S. 1019 and 26 L. R. A. N. S. 349; and that the degree of necessity requisite to support such a way is an absolute necessity, for which inconvenience without more does not suffice.

The principle contended for by the plaintiffs with reference to an easement by necessity follows a line of cases

such as Pettingill v. Porter, 8 Allen (Mass.) 1, 85 Am. Dec. 671; Smith v. Griffin, 14 Colo. 429, 23 P. 905; Galloway v. Bonesteel, 65 Wis. 79, 26 N. W. 262, 56 Am. Rep. 616; and annotation appearing in Ann. Cas. 1913C, 1112, wherein the reasoning is in substance as follows: The word "necessary" cannot reasonably be held to be limited to absolute physical necessity, and as explained in 17 L. R. A. 1020, many courts have signified their approval of the declaration in Pettingill v. Porter, *supra*, to the effect that the word "necessary" is to receive a more liberal and reasonable interpretation so as to include cases where other possible modes of access cannot be made available without labor and expense disproportionate to the value of the property purchased. For decisions which hold that another way of ingress and egress, to negative an implication of a grant of way by necessity, must be reasonably practicable, see Trump v. McDonnell, 120 Ala. 200, 24 So. 353; Smith v. Griffin, *supra;* Gaines v. Lunsford, 120 Ga. 370, 47 S. E. 967, 102 Am. St. Rep. 109; Oliver v. Pitman, 98 Mass. 46; Schmidt v. Quinn, 136 Mass. 575; Goodall v. Godfrey, 53 Vt. 219, 38 Am. Rep. 671; and Galloway v. Bonesteel, *supra.*

Some of the courts have adopted as the test of necessity the question whether the easement is one for which a substitute can be furnished by reasonable labor and expense. Gaynor v. Bauer, 144 Ala. 448, 39 So. 749, 3 L. R. A. N. S. 1082; Bussmeyer v. Jablonsky, 241 Mo. 681, 145 S. W. 772, Ann. Cas. 1913C, 1104; Annotations, 8 L. R. A. N. S. 327 and 10 Eng. Rul. Cas. 58; 17 Am. Jur., Easements, § 44, p. 954, § 50, p. 963.

If the reasonableness of the expense of creating a way is made the test of necessity, it should be determined by comparing the cost of creating the way with the value of the property. See Pettingill v. Porter, *supra;* Wiese v. Thien, 279 Mo. 524, 214 S. W. 853, 5 A. L. R. 1552.

While in making the application of the test, the facts and circumstances of each case must be considered, it is apparent from the following cited cases and a resume of the

facts thereof, that it must be shown that the expense incident to creating the new way must be disproportionate to the value of the plaintiff's property. The facts in the instant case do not warrant that conclusion.

In Carey v. Rae, 58 Cal. 159, M. and R. with others, were tenants in common of a ranch, and in an action of partition, a tract of land, designated as "survey No. 55," was allotted to M. and "survey No. 62" to R. M. brought an action to establish a right-of-way over R.'s land, claiming that he had no other avenue of transit from his land to the county road, and that he was entitled to a way of necessity. It appeared, however, that by the judgment another road was established from M.'s land to the county road, passing along the front of R.'s land, but this road was rendered impassible by a ditch and slough at a point opposite R.'s land, which would require an expenditure of about one thousand dollars to fill it up. It was held that the plaintiff was not entitled to a right-of-way.

In principle, Carey v. Rae, *supra*, is analogous to the case at bar. In the instant case the plaintiffs received a referee's deed containing an express easement which would require them to expend a reasonable amount of money to obtain ingress and egress to and from their property to the public road. This would not be sufficient reason to establish an easement by necessity.

In Cooper v. Maupin, 6 Mo. 624, 35 Am. Dec. 456, the case involved a question whether one had a way of necessity over the lands of another because, to pass over his own lands, he would have to improve a road down a bluff along the Missouri River. The proof showed defendant claimed he could make a road down the bluff in two or three months with a team and a couple of hands, and the court held there was no necessity for his passing over the lands of another.

The plaintiffs, as defendants in the partition action, obtained the relief which they sought. The mere fact that the road over which they formerly traveled would be more convenient, or that to create the new way would necessitate

an expenditure of some money, are not sufficient reasons to warrant an easement by necessity in favor of the plaintiffs, especially so when the expense to create the new way is reasonable and not disproportionate to the value of the plaintiffs' property.

No implication of a grant of an easement arises from proof that the easement will be convenient in the occupation or use of the land granted. The foundation of the easement is by necessity and not convenience. See 19 C. J., Easements, § 115, p. 922. See, also, Waubun Beach Assn. v. Wilson, 274 Mich. 598, 265 N. W. 474, 103 A. L. R. 983.

Even assuming the plaintiffs had established a right-of-way by necessity, such right-of-way would continue only until some other lawful way had been acquired, and ordinarily the right of necessity would not be extinguished so long as the necessity continued to exist. Nevertheless, a way of necessity ceases as soon as the necessity to use it ceases. That would be the situation in the instant case.

If the owner of a way of necessity acquires a public way which is laid out and which affords access to his premises, or if a new way is established by a judgment in partition (which is true in the instant case wherein an express easement is shown in the referee's deeds), the right-of-way of necessity ceases, and the fact that a former way of necessity continues to be the most convenient way will not prevent its extinguishment when it ceases to be absolutely necessary. See 19 C. J., Easements, § 171, pp. 953, 954. See, also, Waubun Beach Assn. v. Wilson, *supra.*

"A right of way of necessity, in whatever manner it might have originated, is limited by the necessity which created it, and is suspended or destroyed, whenever that necessity ceases; and this, notwithstanding its continuance, would be convenient to the party claiming it." Pierce v. Selleck, 18 Conn. 321.

For the reasons given in this opinion, we conclude that no easement by necessity is shown to be in the plaintiffs, but rather plaintiffs have an express easement as set forth

in the referee's deeds in the partition action, which they may properly utilize.

For the reasons given in this opinion, the judgment of the district court is affirmed.

AFFIRMED.