Harold I. MILLER and Norma J.
Miller, husband and wife,
Appellants (Defendants),

v.

Helen STOVALL, Appellee (Plaintiff).

No. 85–232.

Supreme Court of Wyoming.

April 7, 1986.

Donald E. Jones, of Jones & Graham Law Offices, Torrington, for appellants (defendants).

Michael E. Warren, of Sawyer, Warren & Kautz, Torrington, for appellee (plaintiff).

Before THOMAS, C.J., and BROWN, CARDINE, URBIGKIT and MACY, JJ.

BROWN, Justice.

Appellee Helen Stovall filed a complaint in district court alleging that appellants Harold I. and Norma J. Miller had ousted her from the south sixty feet of her property. Appellee relied on her deed and survey to support her claim. Appellants answered the complaint by asserting that in 1950 the disputed sixty feet had been granted to their predecessors in interest by an oral agreement in exchange for an easement over their property. Appellants also asserted that appellee was barred by the statute of limitations, § 1–3–103, W.S.1977, and that they had acquired title to the disputed area by adverse possession. The trial court found that the alleged agreement was "incredulous," that even if there was such an agreement it was void under the statute of frauds, § 1–23–105(a)(v), W.S. 1977, Cum.Supp.1985, and that appellants had not established their claim of adverse possession. The court enjoined each party from interfering with the others' use of their property as described in their deeds, and granted appellee a nonexclusive easement of necessity for ingress and egress to her property.

Appellants contend that the judgment is based upon limited findings of material facts, which are basically erroneous mixtures of conclusions of fact and law. We hold that the trial court's findings must be sustained under the applicable standards of review and affirm, accordingly.

Appellants state the issue as follows: "Whether an originally agreed boundary line (1) intended by the parties in good faith to resolve ownership interests (2) at variance with the descriptions in the deeds emanating from a common grantor and (3) acquiesced in and recognized as the boundary line between various subsequent adjoining landowners (4) for in excess of 25 years is binding upon the present conterminous owners."

This statement assumes factual findings that the trial court did not make. We believe the following questions are presented by this appeal:

I

Was there a valid oral agreement settling a boundary different from that stated in the deeds?

II

If there was no such agreement, is the finding by the trial court that appellants

failed to establish their claim of adverse possession clearly erroneous?

### III

Was appellee barred by estoppel or laches from asserting her claim to the disputed area?

Dale and Hazel Davidson owned a tract of land measuring approximately 436' × 100'. In 1950, the Davidsons conveyed the north one-half of this tract to their daughter and her husband, the Hendricksons. As stated by appellants, the deed conveying this parcel "simply granted the north half of the metes and bounds description originally conveyed to Dale Davidson." This north half of the tract was subsequently conveyed to the Stewarts and finally in 1962 from the Stewarts to appellee. In all of these transfers, the north half of the entire tract was conveyed. In 1980, Hazel Davidson conveyed the south half of the tract to appellants.

Sometime in 1975 appellee had her parcel of land surveyed. As a result of this survey, appellee attempted to erect a fence on the border of the two tracts as shown by the survey. Mrs. Davidson tore the fence down and told appellee that the border was actually four feet beyond a shed on the property. According to the survey, a boundary along this shed would be approximately sixty feet north of the original boundary which divided the entire tract into two equal parcels. The following sketch facilitates discussion:

When appellee attempted to build the fence, Mrs. Davidson told her that when the north half was first conveyed to the Hendricksons there was an oral agreement shifting the boundary to the new position Davidson now claimed. The alleged agreement was made because the Hendricksons, new owners of the north half, required an easement across the south half to reach the road. Because of this easement, and a previously reserved easement on the south boundary of the south half, the Davidsons and the Hendricksons decided that it was necessary to adjust the boundary between the north and south halves, so that each would have approximately the same useable area of land. The "agreed boundary" was settled as four feet north of the shed and along a fence which, in various states of repair, ran east from the shed.

This 1975 dispute was the first time appellee learned of the oral agreement. The alleged agreement was never reduced to writing and no indication of it appeared in any of the deeds conveying the north half of the tract. Mrs. Davidson conveyed the south half of the tract to appellants in 1980, and again the deed made no mention of the "agreed boundary" but rather conveyed "the south half" of the entire tract.

The day before trial Mrs. Davidson quitclaimed to appellants any interest she had in the disputed area.

Appellee again attempted to fence along the surveyed boundary in 1982. This time it was appellants who tore down the fence and asserted ownership to the disputed area. Appellants later improved the old fence, which extended from the shed. Appellee then brought an action seeking possession of the disputed area, damages from appellants, and an easement over the south half appurtenant to the north half.

A trial was held before the judge sitting without a jury. The court granted the disputed area to appellee and also gave appellee an easement of necessity for ingress and egress. No damages were awarded. Appellants claim that this judgment must be reversed, because the findings of fact supporting it are erroneous and because the judgment disrupts an accepted boundary line, settled in good faith and acquiesced in for a long period of time.

## I

The trial court found that the alleged oral agreement was "incredulous." It also found that if any oral agreement did exist, it was voided by the statute of frauds, specifically § 1–23–105(a)(v). Therefore, it held that any claim to the disputed area based on this agreement could not stand.

We begin by looking at the statute of frauds, which provides in pertinent part:

"(a) In the following cases every agreement shall be void unless such agreement, or some note or memorandum thereof, be in writing and subscribed by the party to be charged therewith:

"(v) Every agreement or contract for the sale of real estate, or the lease thereof, for more than one (1) year." § 1–23–105, W.S.1977, Cum.Supp.1985.

The contract for the sale of real estate as contemplated by the statute is one for the transfer of property or real estate, for a fixed price in money or its equivalent. *Allen v. Allen*, Wyo., 550 P.2d 1137 (1976). In the present case, the alleged oral agreement made between the Davidsons and Hendricksons involved a transfer of the disputed area in exchange for the easement across the south half. Such an agreement would fit within § 1–23–105(a)(v).

Appellants claim, however, that the boundary agreed to by the Davidsons and Hendricksons is binding upon their successors regardless of the statute of frauds. We do not agree. 6 Thompson on Real Property § 3035, p. 508 (1962), speaks of boundaries by agreement or practical location.

"In many states it is recognized that adjoining landowners may by an understanding not affected by deeds determine their boundary line in such a manner as to have it binding upon themselves and their successors. This is called 'practical location.' * * * "

However, the doctrine of boundary by agreement is limited. Thompson, supra, states clearly that "[o]ral agreements changing known boundary lines violate the statute of frauds." The rationale is that " * * * if the boundary line is not doubtful or in dispute, an oral agreement for its change is invalid, this involving an actual transfer of land, within the statute. * * * " 2 Tiffany, The Law of Real Property § 653, p. 679 (3d ed. 1939).

Appellants point out that this court recognized boundary by agreement in *Carstensen v. Brown*, 32 Wyo. 491, 236 P. 517 (1925). *Carstensen*, however, also recognized the limitation discussed above. There, Justice Blume stated that "want of knowledge of the true boundary, and uncertainty thereof, is made the very basis of the agreement." Id., 32 Wyo. at 500, 236 P. at 520. The court in *Carstensen* did ultimately hold the parties bound by the agreed line; however, in that case there was no question but that the boundary line was uncertain. This fact distinguishes *Carstensen* from the present case.

The court below found that there was no disputed boundary in this case. Appellants contest this finding, while appellee states that uncontroverted evidence shows there was no dispute.

In *Sowerwine v. Nielson*, Wyo., 671 P.2d 295, 301 (1983), a boundary dispute case, we stated the applicable standard of review:

"Thus, on appeal, it is a firmly established and oft-stated rule that we must accept the evidence of the successful party as true, leave out of consideration entirely the evidence of the unsuccessful party in conflict therewith, and give to the evidence of the successful party every favorable inference that may fairly and reasonably be drawn from it. * * * [T]he findings and judgment of the trial court must be sustained unless clearly erroneous or contrary to the great weight of the evidence. [Citations.]"

On examination by appellee's attorney, Mrs. Davidson testified as follows:

"Q. Now, as I understand it, there was never any dispute between you and the Hendricksons as to where the property line would have been if it would not have been for this exchange of property?

"A. No, or never between any of the other purchasers of this piece of land.

"Q. What I am saying is, there was never any dispute here that this would have been the line until you made that exchange; is that correct?

"A. No, never."

In addition, Mr. Hendrickson testified that the agreed line was intentionally placed north of the true line in exchange for the easement.

■ In light of the above, we cannot say that the trial court's determination was clearly erroneous. Appellants' theory, concerning the agreement, was that the disputed area was retained because of land lost to easements over the south half. We fail to see how the parties could have intended the fair exchange appellants assert if the boundary of each parcel was disputed. The evidence supports the conclusion that this was an exchange of property and not a settling of a disputed boundary, and as such, was within the statute of frauds.

The trial court in its decision letter also found that despite claims from both Mr.

Hendrickson and Mrs. Davidson to the contrary, the oral agreement was "incredulous." This characterization of the claimed oral agreement is imprecise. Although inartfully stated, when read in context, it appears that the trial court did not believe such an agreement existed. For example, after labelling the agreement "incredulous," the court stated that there was no reason "why the Davidsons would convey by deed, a piece of property, and simultaneously, orally, and in a separate deal, attempt to take back a portion of this same property." Later the decision letter stated: "The oral agreement, even if there was such * * * is void." Although appellants presented testimony alleging that there was an oral agreement

"this court has previously stated that a trial judge is entitled to disbelieve uncontradicted testimony, particularly that part based upon opinion where there were facts and circumstances tending to discredit it. [Citation.] * * *" *Boode v. Allied Mutual Insurance Company*, Wyo., 458 P.2d 653, 658 (1969).

Additionally, the trial court, in supporting its conclusion that no oral agreement existed, noted that subsequent conveyances of the north half never mentioned a "carve out" even though the grantors in those conveyances allegedly agreed to the "carve out," and that Mrs. Davidson did not attempt to convey the disputed property to appellants in the 1980 transfer. The court also noted that the only access to the north half of the property after its division was by an easement over the south half. Finally, the court stated that although the "agreement" allegedly granted the Davidsons four feet north of the shed, the evidence showed that, at most, they only used the area up to the shed, as there existed a "fence of convenience" which consisted of wire strung between trees and the back wall of the shed.

■ From this evidence, the trial court's finding that there was no agreement should be sustained. The manner in which the alleged agreement was made questions

the existence of such an agreement, i.e., failure of later conveyances to mention it, and the claimed use of the property. This finding also distinguishes cases in which there clearly was an agreement to exchange land, and subsequent actions pursuant to such agreement upon which appellants attempt to rely. See, e.g., *Rohrbaugh v. Mokler*, 26 Wyo. 514, 188 P. 448 (1920). Again, under the applicable standard of review, we sustain the trial court's finding concerning the alleged agreement.

## II

Appellants claim that if the oral agreement is void, then the Davidsons adversely possessed the disputed area from 1950 to 1975.

> "The elements of adverse possession consist of actual, open, notorious, exclusive and continuous possession of another's real property for the statutory period, which possession must be hostile, and under a claim of right or color of title. [Citation.]" *Rutar Farms and Livestock, Inc., v. Fuss*, Wyo., 651 P.2d 1129, 1132 (1982).

In order to establish title to property acquired by adverse possession, the claimant has the burden of proving the above elements. The claimant must show that these elements existed for at least ten years prior to the commencement of an action affecting title to or possession of the property. *Farella v. Rumney*, Wyo., 649 P.2d 185 (1982). See § 1–3–103, W.S.1977.[1]

Our standard of review of evidence attempting to prove or disprove the existence of these elements is well settled. Where the evidence is conflicting or where there is evidence to sustain the trial court's finding, this court will not interfere with that finding unless it is clearly erroneous or so totally against the great weight of the evidence as to be manifestly wrong. In *Snell v. Ruppert*, Wyo., 582 P.2d 916, 917 (1978), we noted:

" * * * [I]n almost every case it has been the conclusion of this court that when a claim such as adverse possession, which is peculiarly factual in nature, is questioned on appeal, the decision of the trial court, because of its proximity to the witnesses and evidence involved, should be given considerable deference."

However, although findings of fact are presumed correct, this presumption is overcome if, on review of the entire evidence, we are left with a definite and firm conviction that a finding is in error. Findings of fact can also lose the insulation of the clearly erroneous standard if they are induced by an erroneous view of the law. *D.A. Shores v. D.L. Lindsey*, Wyo., 591 P.2d 895 (1979).

In this case the trial court found that the claimants had not carried their burden of proving the existence of all the elements necessary to establish adverse possession of the disputed area. Specifically, in its opinion letter, the court stated that there was no antagonistic or hostile occupation of the disputed area for the statutory period, and that possession under claim of right or color of title had not been established. Appellants claim that there "is not a single thread of evidence" that indicates the adjacent landowners believed the Davidsons' occupancy was permissive and thus not hostile. They also contend that the Davidsons occupied the land under a "claim of right."

Appellants, having acquired the property some five years ago, cannot claim to have adversely possessed the same for the statutory period. They must rely on the doctrine of tacking in order to successfully claim adverse possession. In this connection, they argue that the Davidsons took possession of the disputed area in 1950 under claim of right and not by permission of the Hendricksons. According to appellants this possession continued until 1975.

An adverse occupant cannot tack the possession of a prior occupant to per-

---

**1.** Section 1–3–103, W.S.1977, provides:
"An action for the recovery of the title or possession of lands, tenements or heredit-

aments can only be brought within ten (10) years after the cause of such action accrues."

fect adverse title where the predecessor could not claim the land adversely. *Tissino v. Mavraksis,* 67 Wyo. 560, 228 P.2d 106 (1951). If appellants' predecessor held the disputed territory by permission and not hostilely, the claim of adverse possession must fail. *Johnson v. Szumowicz,* 63 Wyo. 211, 179 P.2d 1012 (1947). This court in *Johnson v. Szumowicz* followed the well-recognized rule that when possession is taken with permission of the owner, the possession does not become adverse without a distinct and open disavowal of the title of the owner, brought home to the owner. Appellee asserts that if the agreement to exchange land was void, then the rule stated in *Johnson v. Szumowicz,* supra, controls. We cannot agree. Under the circumstances of this case the Davidsons possessed the land believing, albeit erroneously, that they owned the disputed tract as a result of the oral agreement.

*Pendley v. Pendley,* Ala., 338 So.2d 405, 406 (1976), is a case that determined the question of hostility under similar circumstances. The question was stated by that court:

"* * * Is possession by the grantee of an oral conveyance, which is invalid to pass title, adverse to the grantor of such conveyance?"

The question was answered in the affirmative; the answer turned on the interpretation of "hostile." Use of land intended to be surrendered by the titleholder is "hostile," because the use is not in subordination to the titleholder. As stated in 3 Am. Jur.2d Adverse Possession § 35, p. 121 (1962),

"[i]t is not necessary that he [the adverse possessor] should have intended to take away from the true owner * * *; it is the intention to possess, and not the intent to take irrespective of his right, which governs."

The conclusion of the Alabama court, which we believe to be correct, also finds support in 4 Tiffany, The Law of Real Property § 1182, p. 916 (3d ed. 1975):

"One who goes into possession of land under a transfer of the land from the

owner, * * * which is invalid because oral merely, may usually assert the bar of the statute against the owner if his possession continues for the statutory period, since his possession is presumed to be adverse to any right in the owner. * * * *"

Thus, if the trial court's finding of absence of hostility was based upon "permission" arising from a void oral exchange, it would be supported by an erroneous view of the law. The lack of hostility, however, was not based upon the court finding the agreement void, for the trial court found the agreement itself "incredulous," in other words, not to be believed. We have earlier determined that the finding must be sustained; we now review the trial court's determination that the Davidsons' use of the disputed area was not hostile or antagonistic.

Mrs. Davidson, as well as appellee's predecessors in interest to the north half, testified below. All testified that the Davidsons used the disputed area and, as stated above, Mrs. Davidson and Mr. Hendrickson testified that the Davidsons used the area because they believed it belonged to them under the oral agreement. Yet, "* * * while the words of the claimant should be taken into consideration, intent as to the character of possession may be better ascertained by acts of possession. * * * *" *D.A. Shores v. D.L. Lindsey,* supra, 591 P.2d at 901. A party's conduct after the time he claimed to have acquired title by adverse possession might be said to have little relevance, but this court believes that such later conduct also indicates his intent during the period of asserted adverse possession. *Rutar Farms & Livestock, Inc., v. Fuss,* supra.

Although Mrs. Davidson claimed she held the disputed area as hers from 1950, the trial court found that Davidson did not hold hostilely. Actions of Mrs. Davidson, after the statutory period had run, support the court's finding. In 1967 or 1968, according to appellee's testimony, Mrs. Davidson asked her if she could move some of her chickens into the shed on the dis-

806

puted property. Mrs. Davidson also failed to include the disputed area in her conveyance to appellants. These acts are inconsistent with Mrs. Davidson's contention that she always claimed to own the land. In Tissino v. Mavrakis, supra, we noted that if a person really claimed to own disputed property by adverse possession, it was strange that he would not include that property in a deed conveying all of the tract he clearly owned. In addition to these indicias of lack of hostile intent, appellee also testified that in 1975 Mrs. Davidson erected a stronger fence along the "oral boundary" thus causing appellee to speak with Mrs. Davidson regarding a survey of the property in order to establish the proper boundaries. Mrs. Davidson's response was alleged to be to the effect that appellee should have the property surveyed and the fence would be removed if the survey showed that the fence encroached upon appellee's land. Although Mrs. Davidson later refused to abide by the survey, her initial response also indicated that she did not claim the land to the old fence.

This evidence is sufficient to sustain the trial court's finding that the property was not held hostilely by the Davidsons. This finding destroys the claim of adverse possession on the part of the Davidsons, at least until 1975, and in turn prevents appellants from successfully tacking to their possessory period the time the disputed area was allegedly adversely possessed by the Davidsons. Although appellants presented evidence which supports their claim that the land was under the Davidsons' hostile possession, and continue to pursue that claim before this court, we must remember the "clearly erroneous" standard of review. We do not reverse findings and judgments merely because this court may have decided the question differently. Doenz v. Garber, Wyo., 665 P.2d 932 (1983).

The question of whether the Davidsons held under a "claim of right"[2] was also decided adversely to the appellants. "Claim of right" means that the entry by the claimant must be to claim the property as his own and to hold it for himself. 7 Powell, The Law of Real Property § 1013[2][f] (1982). Appellants contend that the trial court erroneously found that there must be a mistake in fact or belief in order to find a "claim of right." Whether the trial court's finding on this element was based upon erroneous application of the law is immaterial in light of our holding sustaining the finding that appellants failed to carry their burden of establishing the element of hostility necessary to their claim.

III

Appellants assert that because the Davidsons owned both parcels at one time and established an agreed boundary, this practical location is binding upon the grantees and their successors who take with reference to that boundary. This doctrine applies only if the parcels are sold with reference to the boundary established by the grantor. Cunningham, Stoebuck & Whitman, Law of Property § 11.8 (1984). Here, appellants claim that the Hendricksons purchased with knowledge of the line marked by the fence. Although this may be true, the land was conveyed by deeds without reference to the fence, but rather to halves of the entire parcel. Under these circumstances the doctrine is not applicable.

Appellants also contend that appellee should be barred from claiming title to the disputed area under the equitable doctrine of estoppel. To support a claim of estoppel the party "must establish two elements (1) there must be a lack of knowledge of facts and no means of discovering these facts; and (2) there must be detrimental reliance upon the representation. * * *" National Crude, Inc. v. Ruhl,

2. This court has previously held that possession need not be taken under "color of title," since claim of right is sufficient for the purposes of initiating adverse possession. Doenz v. Garber, Wyo., 665 P.2d 932 (1983).

Wyo., 600 P.2d 716, 720 (1979). Here, appellee twice attempted to erect a fence along the surveyed boundary line. Mrs. Davidson tore the fence down the first time, as did appellants the second. As pointed out by the trial court, appellants did not rely on any representations by appellee. Their actions showed that they openly disputed appellee's contention as to the boundary. This boundary could easily be established by a survey and reference to their deed. Estoppel is not applicable here.

■ Nor can we accept appellants' contention that laches should prevent appellee from asserting her claim. "Laches is a form of equitable estoppel based on an unreasonable delay by a party in asserting a right. * * *" *Murphy v. Stevens,* Wyo., 645 P.2d 82, 91 (1982). Unless the delay has worked an injustice, prejudice or disadvantage to the defendant it is not of itself laches. *Id.* Again, appellants cannot bring themselves within the protection afforded by the doctrine. After appellee had the property surveyed, she twice attempted to erect a fence and her attorney wrote appellants concerning the dispute. Although it appears appellants have made some improvements to the fence, we do not believe that any loss they will suffer can be attributed to appellee's undue delay in asserting her right to the property.

Finally, appellants contend that it was error to deny their claim to the disputed area and yet grant appellee the easement over their property. They contend that appellee cannot refute the oral agreement and at the same time seek to benefit under the agreement. Appellants, however, misconceive the reason appellee was granted an easement. The trial court granted the easement not pursuant to the alleged oral agreement, but rather as an easement of necessity.

■ This court has stated "that common-law way of necessity can be imposed in a proper case where the isolated land-owner chooses that course." *Snell v. Ruppert,* supra, at 1046, n. 4.[3] A way of necessity "ordinarily arises when one conveys to another land entirely surrounded by his, the grantor's land, or which is accessible only across either the grantor's land or the land of a stranger. * * * *" 3 Tiffany, The Law of Real Property § 793, p. 284 (3d ed. 1939). In such cases, the courts in pursuit of public policy which favors full utilization of the land, recognize a right of way appurtenant to the land conveyed in favor of the grantee. *Id.*

■ In the present case there is no dispute that the only access to the north half of the tract is by crossing the south half retained by the grantors. In fact, it is clear that every occupant of the north half has used the drive over which appellee was granted her easement. The grant of this easement was proper, not in recognition of the alleged oral agreement, but rather in recognition of the implied intent of the grantors, the Davidsons.

The trial court's finding that the alleged oral agreement did not exist is supported by sufficient evidence. We cannot say the court's finding that the Davidsons did not hold the land hostilely was clearly erroneous. Nor have appellants shown that they are entitled to the disputed area under any equitable doctrine.

Affirmed.

---

**3.** We impliedly recognized that a common-law way of necessity exists in this state in *Walton v. Dana,* Wyo., 609 P.2d 461 (1980), when we stated that the petitioners in the case had their choice of pursuing their claim to a common-law way of necessity or proceeding under § 24–9–101, W.S.1977.