**FERGUSON RANCH, INC., a Wyoming Corporation, Appellant (Defendant),**

v.

**Edward F. MURRAY, Jr., and William J. Edwards, Appellees (Plaintiffs).**

**No. 90–166.**

Supreme Court of Wyoming.

May 16, 1991.

Charles E. Graves of Graves, Santini and Villemez, Cheyenne, for appellant.

John B. Rogers, Cheyenne, for appellees.

Before THOMAS, CARDINE, MACY and GOLDEN, JJ., and TAYLOR, District Judge.

CARDINE, Justice.

This was an action by appellees Edward F. Murray, Jr. and William J. Edwards (M & E) against Ferguson Ranch, Inc. to obtain a right of way, termed a common law way of necessity, across Ferguson lands. Ferguson appeals the judgment granting M & E the right of way.

The question we must answer is this: Where a grantee takes title to a parcel of property which has no adequate means of ingress/egress (is landlocked), is the grantor obligated to provide his grantee with a common law way of necessity without compensation therefor, or must the grantee obtain a private road in accordance with W.S. 24–9–101 *et seq.* We address also the question of whether the owner of a landlocked parcel must look to his grantor for relief from his landlocked condition before seeking a right of way across the lands of third parties.

We reverse the decision of the district court. Appellees' source of relief, under the circumstances of this case, is an action for a private road pursuant to W.S. 24–9–

101. They may not demand a common law way of necessity over the lands of the appellant, Ferguson Ranch, Inc. (Ferguson).

Ferguson raises these issues:

"I. Did the Trial Court err, as a matter of law, in granting a 'way of necessity'?

"II. Did the Declaration of a Statutory private road extinguish common law easements to the same property?

"A. Is the Appellee barred due to abandonment of any implied easement?

"B. Was the issue of necessity previously litigated and therefore barred by the doctrine of collateral estoppel/issue preclusion?

"C. Was the Appellee barred by the Doctrine of Judicial Estoppel?

"D. Did necessity cease with the Declaration for Appellee in the Statutory private way of necessity proceeding?

"III. Did the Trial Court err in failing to bar the easement across Defendant's [Ferguson] lands by adverse possession for the statutory period?"

M & E state this outline of the issues:

"A. Did the trial court err, as a matter of law, in granting a 'way of necessity'?

"B. Did a commenced but uncompleted statutory proceeding for the establishment of a private road operate to extinguish the way of necessity as a result of:

"1. Abandonment?

"2. Collateral estoppel/issue preclusion?

"3. Judicial estoppel?

"4. Termination of the element of necessity?

"C. Did the trial court err in failing to bar the easement across Defendant's [Ferguson] lands by adverse possession for the statutory period?"

## FACTS

Ferguson owns section 18. M & E own section 19 which is landlocked—that is, there is no easement or right of way providing access known to law as ingress and egress. M & E seek a common law way of necessity over Ferguson's section 18.

At one time Ferguson owned both sections 18 and 19. On October 19, 1984, Ferguson conveyed section 19 to a third party. No easement or right of way to section 19 was provided at the time of conveyance, although appellee alleges an existing road across section 18 was used for that purpose. On March 1, 1987, the third party sold and conveyed section 19 to M & E. M & E commenced a proceeding before the Laramie County Commissioners to obtain a private road pursuant to W.S. 24-9-101. M & E were successful in this proceeding which culminated with entry of an order August 15, 1988, establishing a surveyed private road across the lands of John and Gladys Lindt conditioned upon payment of damages for the taking in the amount of $33,600. M & E were dissatisfied with the results of the proceeding and filed a petition for review in the district court alleging that the damages awarded for establishment of the private road were excessive, speculative, and arbitrary. The respondents, John and Gladys Lindt, also filed a petition for review in the district court which alleged that the action of the county commissioners was arbitrary, capricious, and an abuse of discretion and M & E were not entitled to a private road because they had a common law way of necessity over the lands of Ferguson. M & E obtained dismissal of the appeal and commenced this action for a common law way of necessity over the Ferguson section 18.

M & E alleged that use of the old roadway over section 18, claimed abandoned by Ferguson, was "an absolute necessity" if they were to be able to enter and leave their lands and enjoy the rights of ingress and egress for themselves and their heirs, assigns, guests, invitees and licensees. We emphasize at this point that M & E pled, and attempted to prove, facts which would have established a common law way of necessity. There is a significant difference between a common law way of necessity and an implied easement. We are satisfied that M & E sought the former rather than the latter. The distinction between the two will be addressed later in the opinion.

## DISCUSSION

The concept of a common law way of necessity serves several purposes, the most important of which was to ensure that land could be used for productive purposes. 2 Thompson on Real Property §§ 362–368 (1980 Repl.). Another very important facet of the doctrine was that, because the grantee of such lands had no common law right to claim a way across the land of third parties, the way of necessity was the only method by which ingress/egress could be obtained. *Id.* Opposed is a policy that recognizes that it is unfair or inequitable to permit a landlocked landowner to claim, without compensation, a way of necessity across the lands of his grantor which could have been provided for at the time of purchase and conveyance and which may have resulted in a reduced final cost of the land. *Id.* The competing policy questions were resolved by enactment of W.S. 24–9–101 which says that the solution to access is to allow a landlocked landowner to condemn a best-location right of way across the lands of a stranger upon payment of damages rather than to require a grantor, in an arm's-length real estate transaction, to provide his grantee with a right-of-way that is free of compensation therefor. The grantee at the time of real estate acquisition is well able to figure out that the property is landlocked and to negotiate a right-of-way as a part of the purchase.

In this case a statute, W.S. 24–9–101, provides a means and procedure for obtaining access to the landlocked property. The statute eliminates the problem. It states as follows:

"Any person whose land has no outlet to, nor connection with a public road, may apply in writing to the board of county commissioners of his county for a private road leading from his premises to some convenient public road. At least sixty (60) days prior to applying to the board, the applicant shall give notice in writing to the owner, resident agent or occupant of all lands over which the private road is applied for, of his intent to apply for a private road. If the owner of the land is a nonresident, and there is no resident agent upon which personal service can be had, then the notice may be published once a week for three (3) weeks in a newspaper published in the county. The last publication shall be at least thirty (30) days before the hearing of the application. At the hearing, all parties interested may appear and be heard by the board as to the necessity of the road and all matters pertaining thereto. Upon the hearing of the application, whether the owner or others interested appear or not, if the board finds that the applicant has complied with the law and that the private road is necessary, the board shall appoint three (3) disinterested freeholders and electors of the county, as viewers and appraisers, and shall cause an order to be issued directing them to meet on a day named in the order on the proposed road, and view and locate a private road according to the application therefor, and to assess damages to be sustained thereby. If for any reason the viewers and appraisers are unable to meet at the time set by the board to view the proposed road, they may fix some other date, but shall give notice in writing to the owner, resident agent or occupant of the lands over which the road is proposed to be laid of the time and place where the viewers will meet, at least ten (10) days before viewing the road, at which time and place all persons interested may appear and be heard by the viewers. Before entering upon their duties the viewers shall take and subscribe to an oath that they will faithfully and impartially perform their duties under their appointment as viewers and appraisers. The viewers shall then proceed to locate and mark out a private road in accordance with the application or in such other manner and location they deem appropriate, provided the location of the road shall not be marked out to cross the lands of any person whose lands were not described in the application and who has not given notice of the application. The proposed road shall not exceed thirty (30) feet in width from a certain point on the premises of the applicant to some certain point on the public road, and shall be located so as to

do the least possible damage to the lands through which the private road is located. The viewers shall also at the same time assess the damages sustained by the owner over which the road is to be established and make full and true returns, with a plat of the road to the board of county commissioners."

▊ To the extent any ambiguity may exist in our previous decisions, we make clear now that a civil action for a common law way of necessity is not available because of the existence of W.S. 24–9–101. *Walton v. Dana*, 609 P.2d 461, 463–64 (Wyo.1980); *Snell v. Ruppert*, 541 P.2d 1042, 1046 (Wyo.1975); and *see Leo Sheep Co. v. United States*, 440 U.S. 668, 680, 99 S.Ct. 1403, 1410, 59 L.Ed.2d 677 (1979).

The decision in *Snell* is quite clear. We held that the concept of a common law way of necessity is theoretically incompatible with Art. I, § 32 of the Wyoming Constitution, which provides:

"Private property shall not be taken for private use unless by consent of the owner, except for private ways of necessity, and for reservoirs, drains, flumes or ditches on or across the lands of others for agricultural, mining, milling, domestic or sanitary purposes, nor in any case without due compensation."

In addition, we also held that if a statute covers a whole subject matter, the abrogation of the common law on the same subject will necessarily be implied. Our terse and rather clear conclusion was that W.S. 24–9–101, *et seq.*, "offers complete relief to the shut-in landowner and covers the whole subject matter." *Snell*, 541 P.2d at 1046. Footnote 4 of the *Snell* opinion does detract from the clear language used in the body of the opinion, and footnote 1 of the

*Dana* opinion does not serve to clarify the ambiguity created in *Snell*. Nonetheless, we conclude the time has come to announce that anything said in these decisions, or our decisions which have followed *Snell* and *Dana*, such as *Miller v. Stovall*, 717 P.2d 798, 807, 72 A.L.R.4th 113 (Wyo.1986) [1] and *Bush v. Duff*, 754 P.2d 159, 163 (Wyo. 1988) [2] which may suggest the existence of a common law way of necessity, is specifically overruled and is dicta. This construction of W.S. 24–9–101, *i.e.*, that it obviates the need for recognition of the common law way of necessity, serves to clarify this area of the law and will also eliminate the confusion and complications that will undoubtedly arise out of the rule that a common law way of necessity lasts only as long as the necessity. *See, e.g., Joines v. Herman*, 89 N.C.App. 507, 366 S.E.2d 606, 607–08 (1988); *Dulaney v. Rohanna Iron and Metal, Inc.*, 344 Pa.Super. 45, 495 A.2d 1389, 1391 (1985); *Oyler v. Gilliland*, 382 So.2d 517, 519, 10 A.L.R.4th 443 (Ala.1980); *Badura v. Lyons*, 147 Neb. 442, 23 N.W.2d 678, 683–85 (1946); *Roediger v. Cullen*, 26 Wash.2d 690, 175 P.2d 669, 673 (1946). A private road established in accordance with W.S. 24–9–101, provides a more permanent as well as a more equitable solution.

Moreover, as has been noted in several of our decisions, *e.g., Dana* and *Snell*, forcing a landlocked landowner to choose a wholly illogical, uneconomic, and unproductive road makes no sense at all. If that were to be the case, our state would soon be riddled with roads which waste space and money and create road development problems that would eventually have to be paid for by taxpayers who are truly strangers to the roadways.

1. We note that the reference to a common law way of necessity was dicta in the *Miller* case. The distinction between a common law way of necessity and an implied easement is an extremely important one. 2 Thompson on Real Property § 362 (1980 Repl.).

2. The discussion of the common law way of necessity in *Bush* is also largely dicta, because the court was really concerned with an implied easement, rather than a common law way of necessity. As noted by Professor Thompson,

the confusion between the two is not uncommon. 2 Thompson on Real Property § 362 (1980 Repl.). Upon close analysis, we agree with the United States Supreme Court that Wyoming no longer recognizes a common law way of necessity. *Bush*, 754 P.2d at 163 fn. 3; *Leo Sheep Co. v. United States*, 440 U.S. 668, 680, 99 S.Ct. 1403, 1410, 59 L.Ed.2d 677 (1979).

We note here also that some states treat all such easements by statute which does add clarity to this area of the law. *See Parham v. Reddick*, 537 So.2d 132, 135–36 (Fla.App.1988).

■ We reemphasize that a landlocked landowner is not entitled to seek whatever road he desires or is most convenient to him. He still must seek, and the county commissioners are bound to approve, only such means of access to landlocked property as are reasonable. In the instant case, if the most practical and reasonable route is across the lands of third parties, rather than across the Ferguson lands, then that is a factual question to be resolved by the county commissioners.

■ As a result of this holding, we conclude that the district court was without jurisdiction to entertain M & E's suit for a common law way of necessity. *McGuire v. McGuire*, 608 P.2d 1278, 1290–91 (Wyo. 1980). Our holding that the existence of W.S. 24–9–101 precludes an action for a common law way of necessity serves to clarify and, perhaps, extends somewhat previous holdings of this court. Therefore, in the interests of fairness, and because the parties to First Judicial District Court, Civil Docket 117, Page 463, were very likely misled by the district court having purported to dismiss that action, as well as the underlying proceedings before the county commissioners, we will further direct that the parties to that action may pursue their respective appeals to the district court from the decision of the county commissioners. Such action must be commenced within thirty (30) days of the date of this opinion, or the decision of the county commissioners will be final, with the only further action required being that M & E must fulfill the remaining requirements of the governing statutes if they wish a private road. We emphasize again, that the concept of a common law way of necessity should, in any event, play no part in the review of the county commissioners' decision by the district court.

It is suggested that, by this opinion, we legislate. The suggestion is patently incorrect. The critical decision which is the foundation for this opinion is *Snell v. Ruppert*, 541 P.2d 1042. The United States Supreme Court read *Snell* just exactly as it is read in the majority opinion of this court. *Leo Sheep Co. v. United States*, 440 U.S. at 680, 99 S.Ct. at 1410. Thus, it cannot accurately be said that the result is "strained." It is unfortunate that subsequent decisions of this court failed to fully recognize the holding of *Snell v. Ruppert*, but *none* of those decisions employ the "way of necessity" as a remedy, and the discussion of it amounts to nothing more than dicta. This probably resulted because it was not *necessary* to fully explore the concept of the "way of necessity" in those cases.

Because of this disposition, we need not address the other issues raised by the parties.

Reversed and remanded to the district court with directions that the district court dismiss the complaint for lack of jurisdiction. Further, the order of the district court dismissing the petitions for review in the related matter arising before the county commissioners is reversed and the district court is instructed to vacate that order. The parties to the petitions for review of the order of the Laramie County Commissioners may continue their appeals in the district court in accordance with the directions provided in this opinion.

THOMAS, Justice, dissenting.

For almost one hundred years, the statutes of the State of Wyoming have provided for the establishment of a private road in favor of "[a]ny person whose land has no outlet to, nor connection with a public road, * * *." Section 24–9–101, W.S.1977 (Cum.Supp.1990). In the course of that one hundred years, this court has considered the legal concept of a private way of necessity on at least five occasions. In none of these cases, contrary to the implication of the majority, has there been any suggestion of any constitutional antithesis with respect to the common-law way of necessity. This history is consistent with the legal fact that the common-law way of necessity is not a taking, while the constitutional provision is intended to authorize a taking; instead, it is a doctrine of an implied grant. Stated another way, the common-law way of necessity is a doctrine of conveyancing;

it is not an aspect of the doctrine of eminent domain.

The majority asserts a holding in *Snell v. Ruppert*, 541 P.2d 1042 (Wyo.1975), that a "common law way of necessity is theoretically incompatible with Art I, § 32 of the Wyoming Constitution, * * *." (At 290). To ascribe such a holding to *Snell* is certainly overly bold, if not a clear mistake. To suggest, as the majority does, that "[i]t is unfortunate that subsequent decisions of this court failed to fully recognize the holding of *Snell v. Ruppert*," (at 291) is simply wrong because there is no such holding. The only holding of *Snell* in this regard is that it was not necessary for the owner of the landlocked tract to first pursue the common-law way of necessity before invoking the statutory remedy. It is marginally acceptable for advocates to invoke selective reading of court opinions, but it is inappropriate for a court to treat its own precedents in that fashion.

This court consistently has ruled that the statutory right to have a private road established is an alternative remedy to the common-law way of necessity for the owner of the landlocked tract. I do not perceive this case as one in which it is either appropriate or necessary to abolish legal precedent that is long standing and presumably has been accepted by the legislature. Because I have a serious question as to whether this case can be resolved according to the majority opinion, I dissent.

In *McGuire v. McGuire*, 608 P.2d 1278, 1288 (Wyo.1980), this court said:

"* * * In *McIlquham v. Anthony Wilkinson Live Stock Co.*, 1909, 18 Wyo. 53, 104 P. 20 [1909], this court implicitly found that the statute [the predecessor of Section 24-9-101, W.S.1977 (Cum. Supp.1990)] was an alternative remedy and it was not intended to supplant the common-law right of a grantee to a means of access to his land over the lands of his grantor."

*McGuire*, in terms of its *ratio decidendi*, dealt with the application of the statute and the requirements incorporated in it for establishing a private road pursuant to it.

In a similar vein, in *Snell*, when confronted with a contention that Ruppert did not qualify for relief under the statute because he had available to him a common-law way of necessity, the court recognized Ruppert's right to invoke the statute. The court said:

"The Snells contend that a condition precedent to proceeding under the statute is that Ruppert must first proceed in a civil action to enforce a common-law way of necessity across intervening lots of the subdivision. There is no such condition imposed by the statute. We cannot stretch, extend, enlarge nor amend what the legislature has clearly said." *Snell*, 541 P.2d at 1046.

On the same page, however, at footnote 4, the alternative remedy concept was clearly articulated:

"By our holding here, we do not foreclose the possibility that a common-law way of necessity can be imposed in a proper case where the isolated landowner chooses that course. While not in point because it did not consider the statutory procedure and was a clear case against the granting of a way of necessity, *McIlquham v. Anthony Wilkinson Live Stock Co.*, 1909, 18 Wyo. 53, 104 P. 20, does ponder the granting or denial of a common-law way of necessity."

For the majority to conclude only that "[f]ootnote 4 of the *Snell* opinion does detract from the clear language used in the body of the opinion" (at 290) is a classic understatement. This recognition of the alternative remedy is consistently maintained in *Walton v. Dana*, 609 P.2d 461 (Wyo.1980), and in *Bush v. Duff*, 754 P.2d 159 (Wyo.1988). In this latter case, the court said:

"Such a common-law way of necessity does not constitute a *taking* subject to constitutional restraints found in Art. 1, §§ 32 and 33 of the Constitution of the State of Wyoming because the common law presumes that the grant of ingress and egress from land conveyed by the owner of the servient estate was intended by the parties. *Snell v. Ruppert*, Wyo., 541 P.2d 1042 (1975); 3 R. Powell, The Law of Real Property, supra, Ch. 34,

¶ 410 at 61–68. The rule of the common law is that a way of necessity goes with the land constituting the dominant estate, and no payment of additional compensation is contemplated." *Bush*, 754 P.2d at 163.

With this history in perspective, a critical evaluation of the rationale of the majority opinion is in order. The point of departure is the statement at page 289 of the majority opinion that:

"* * * Opposed is a policy that recognizes that it is unfair or inequitable to permit a landlocked landowner to claim, without compensation, a way of necessity across the lands of his grantor which could have been provided for at the time of purchase and conveyance and which may have resulted in a reduced final cost of the land."

The authority apparently cited for this novel comment is 2 Thompson on Real Property, §§ 362–368 (1980 Repl.). A careful reading of that text fails to disclose any basis for the statement articulated by the majority. In any event, it is clearly incompatible with the Wyoming precedent cited above.

There can be little doubt that this court has acknowledged the statutory recognition of the common-law way of necessity by the adoption of § 8–1–101, W.S.1977. *Snell*, 541 P.2d 1042. The majority now holds that the statutory adoption of this common-law remedy was repealed by implication by the adoption of § 24–1–109, W.S. 1977 (Cum.Supp.1990). In light of the continual recognition by this court of the proposition of alternative remedies, repeal by implication is highly suspect. It appears that the majority has misread the legislative intent in the same way that the precedents of this court have been misread and given a strained interpretation. Not only that, but the majority has abdicated the interpretation of Wyoming law to the federal judiciary.

I am satisfied that the court has usurped the prerogative of the legislature in this instance and has achieved a result by judicial legislation. This case can be resolved without that judicial legislation, and it should be. I agree that the Order Granting Motion for Summary Judgment must be reversed, but the case should be remanded for trial of genuine issues of material fact. Those issues of material fact relate to a determination of the prior events surrounding the effort to establish a private road under the statute. The legal issues then to be resolved would relate to the impact of that effort upon the common-law way of necessity. For example:

1. Is the doctrine of judicial estoppel applicable?
2. Has there been an election of remedies by Murray and Edwards?
3. Did that effort manifest a waiver or abandonment of the alternative remedy?

While I am satisfied that the summary judgment must be reversed, the correct resolution of this case is to remand it for trial. There is no justification, other than a legislative decision, to direct that the case must be dismissed for lack of jurisdiction.